BRADS, Appellee,

v.

**FIRST BAPTIST CHURCH OF GERMANTOWN, OHIO, Appellant.**

[Cite as *Brads v. First Baptist Church of Germantown,
Ohio* (1993), 89 Ohio App.3d 328.]

Court of Appeals of Ohio,
Montgomery County.

No. 13653.

Decided June 18, 1993.

330

*Christopher J. Cornyn,* for appellee.

*Mark R. Chilson,* for appellant.

---

GRADY, Presiding Judge.

Defendant First Baptist Church of Germantown, Ohio ("Church") appeals from a judgment in favor of its former pastor, C. Marvin Brads, on his claim that the Church breached its contract to pay him retirement benefits. The Church argues that there was insufficient evidence of a contract, and that if there was a breach of contract, the Church should be permitted to specifically perform instead of being ordered to pay lump sum damages. The Church also argues several

evidentiary errors. We find no error, except as to the damages order. The matter will be remanded for a new trial on that issue.

I

Marvin Brads became pastor of the First Baptist Church of Germantown, Ohio, in January 1958. In June 1971, Brads suffered a heart attack and was hospitalized. While Brads was recuperating, an officer of the Church told Brads that the Church had voted to pay his full salary for the remainder of his lifetime. That promise was unperformed because Brads subsequently recovered and resumed his pastoral duties.

In April 1980, Brads again encountered heart problems. Upon the advice of his doctor, Brads approached the deacons of the Church about retirement. Brads proposed that his salary be reduced after retirement through a series of gradual step-downs, to an amount approximately one-third of the salary he was then receiving. Brads' proposal was accepted by the deacons. Under the terms of their agreement the Church placed Brads on disability retirement status, conferred an honorary title on him, gave him office space in the church, and allotted him retirement benefits according to the agreed step-down schedule. Brads was required to aid, assist and advise whomever the Church called as a new pastor, to the extent Brads' health would allow.

Brads and the Church deacons jointly recommended to the congregation that it adopt the agreement, which the congregation did, unanimously, at a regularly called business meeting in 1980. Brads then left his position as pastor and his benefits commenced.

In 1985, the congregation was advised by a Church officer that the benefits paid to Brads under the 1980 agreement should continue for Brads' lifetime. The congregation once again unanimously approved and reaffirmed the agreement.

Brads received his benefits from 1980 through early July 1990, when he was notified by Church officials that he had been dismissed from the membership of the Church and that no more payments would be made to him. Other benefits, such as free office space, were also discontinued.

On December 21, 1990, Brads filed an action against the Church and other defendants based on several claims, including breach of contract. Through a series of amended complaints and dismissals of parties and claims, Brads' cause of action was finally reduced to a single claim against the Church, that the Church had breached its contract to pay Brads' retirement benefits for life.

A motion for summary judgment by the Church was overruled by the trial court. The matter proceeded to a jury trial on Brads' breach of contract claim. The defense offered by the Church was that there was no legally binding contract

that required the Church to pay Brads' benefits for his life and that the payments to Brads had been a gift by the Church.

Motions by the Church for a directed verdict were overruled. The jury returned a verdict in favor of Brads. Motions by the Church for judgment notwithstanding the verdict, a new trial and remittitur were overruled. This timely appeal by the Church followed.

## II

For its first assignment of error the Church claims:

"The trial court erred in denying summary judgment in favor of defendant-appellant in regard to the claims of plaintiff-appellee in the amended complaint, where the facts and evidence available to the court, pursuant to Rule 56(C) of the Ohio Rules of Civil Procedure, construed most strongly in favor of plaintiff-appellee, demonstrated no genuine issue of material fact and it appeared from such evidence that reasonable minds could only come to but one conclusion: that a legally enforceable contract for a lifetime payment was never created."

Civ.R. 56(C) provides:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. Before summary judgment may be granted the court must find that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to

but one conclusion, and that favors the movant. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. In reviewing summary judgment an appellate court must view the evidence in a light most favorable to the party opposing the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. When the evidence is so viewed, if reasonable minds can come to differing conclusions, the motion for summary judgment should be overruled. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311.

■ The Church correctly observes that at the trial of this breach-of-contract action the burden of proving the existence of a valid, binding contract was on plaintiff Brads. To constitute a valid contract the following must be present:

" * * * parties capable of contracting; a lawful subject matter; a sufficient consideration; a meeting of the minds of the parties; an actual agreement between the parties to do or to forbear doing the thing proposed in the agreement; and a compliance with the law in respect of any formal requisites which may pertain to the contract." (Footnotes omitted.) 17 Ohio Jurisprudence 3d (1980) 440–441, Contracts, Section 11.

One of the elements essential to a valid contract is a meeting of the minds of the parties as to the terms of the contract. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 2 OBR 632, 442 N.E.2d 1302.

■ The Church argues that the evidence submitted in connection with its motion for summary judgment demonstrates that there was no "meeting of the minds" between Brads and the Church that the payments by the Church to Brads were to be for his lifetime. The Church points out that the word "lifetime" was never used in the April 1980 contract. Thus, the Church argues, because an element necessary to the formation of a valid contract is missing, reasonable minds can come to but one conclusion, that no valid, binding contract existed.

Brads states, in both an affidavit and a deposition, that in April 1980, he and the deacons recommended a plan, which the Church accepted, providing for disability retirement and a salary step-down to one-third of his regular salary, which he was to receive for life. Brads also states that the Church reaffirmed the agreement in 1985.

Construing the evidence in the light most favorable to Brads, as we are required by Civ.R. 56(C), we conclude that a genuine issue of material fact was presented by the evidence, that is, whether there was a meeting of the minds between Brads and the Church that the payments by the Church to Brads were to continue for his lifetime, and that reasonable minds could reach different

conclusions on this issue. Thus, the trial court properly overruled the motion for summary judgment by the Church.

This assignment of error is overruled.

### III

For its second and third assignments of error, the Church states:

"The trial court erred in overruling defendant-appellant's motion for judgment notwithstanding the verdict, where, upon examination of the materiality of the evidence, there was no evidence of substantial probative value to support a finding of an essential element of a legally binding contract: consideration.

"The trial court erred in denying defendant-appellant's motion for a directed verdict, where the pleadings and evidence presented by plaintiff-appellee demonstrated that defendant-appellant was entitled to judgment as a matter of law because there was no probative evidence to support a finding of an essential element of a legally binding contract: consideration."

We will consider these assignments of error together, as both are based upon the same claim, a lack of consideration.

Civ.R. 50(A)(4) provides for motions for a directed verdict.

"A court may properly grant a motion for a directed verdict where, after construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. Civ.R. 50(A)(4). If, however, there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." *Crawford v. Halkovics* (1982), 1 Ohio St.3d 184, 185–186, 1 OBR 213, 214, 438 N.E.2d 890, 892.

A motion for a directed verdict presents a question of law, not factual issues, and the weight of the evidence and credibility of the witnesses are not considered.

"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it

tends to prove. The 'reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim." *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 116–117, 430 N.E.2d 935, 938.

Civ.R. 50(B) provides for motions for judgments notwithstanding the verdict, and such motions are governed by the same standard as that for directed verdicts. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334; *Gregg v. Kroger* (Apr. 19, 1991), Champaign App. No. 90CA12, unreported, 1991 WL 64985.

The Church moved for a directed verdict at the close of Brads' case and again at the close of all the evidence. Subsequent to the verdict, the Church moved for judgment notwithstanding the verdict. The grounds for both motions were a failure to prove consideration.

 Consideration is, of course, an element necessary for a binding contract, and a complete lack of any consideration is a valid defense to a breach of contract action. 17 Ohio Jurisprudence 3d (1980) 479–480, Contracts, Section 48. Consideration may consist of either a detriment to the promisee or a benefit to the promisor. *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 583 N.E.2d 1056. A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee. 17 Ohio Jurisprudence 3d (1980) 488–489, Contracts, Section 56. Absent a showing of fraud, consideration is not deemed legally insufficient merely because it is inadequate. *Mooney v. Green* (1982), 4 Ohio App.3d 175, 4 OBR 276, 446 N.E.2d 1135.

 The evidence demonstrates that in 1980 Brads, while serving as pastor, told the deacons of the Church that his physician had recommended that Brads retire as active pastor because of health problems. Brads proposed a gradual reduction in the salary he was then being paid, through a series of "step-downs," to a final amount representing approximately one-third of that salary. According to the evidence presented by Brads, all parties knew and understood this final step-down amount would be paid to Brads for life. The deacons accepted Brads' proposal.

The parties jointly prepared an agreement in writing, Plaintiff's Exhibit 1, which was presented to and adopted by the entire church congregation in 1980, and readopted by the congregation in 1985. By the terms of this document, the Church placed Brads on disability retirement status, conferred upon Brads the honorary title of Pastor Emeritus, allowed Brads to set up an office in the church, and allotted retirement benefits to Brads according to the step-down schedule

agreed upon. Brads was obligated to aid, assist and advise whomever the church called as a new pastor, to the extent that Brads' health would allow. Over the course of the next ten years Brads preached occasionally at First Baptist Church, taught Sunday school classes there, served on the budget committee and helped with administrative matters.

The foregoing evidence, if believed, demonstrates that the Church received a benefit in the form of Brads' promise to assist a new pastor and that Brads received the benefit of payments, office space and title. Each party performed on these promises to confer an actual benefit on the other. Those benefits were a product of the agreement and subsequent to it.

While we recognize the conflicting nature of the testimony presented in this case, construing the evidence most strongly in favor of Brads and accepting such evidence as true, as we must for purposes of the motions for directed verdict and J.N.O.V., we conclude that there is some competent evidence to demonstrate the existence of consideration by Brads such that reasonable minds might reach differing conclusions on that issue. Thus, the trial court did not err when it overruled the motions for directed verdict and judgment notwithstanding the verdict.

These assignments of error are overruled.

## IV

For its fourth assignment of error First Baptist Church claims:

"The trial court erred in failing to reduce the judgment upon the jury verdict, where the evidence regarding the alleged contract demonstrated that there was a unilateral promise for an agreed exchange to pay money periodically into the future and the law and public policy prohibits the injured party more than the benefit contained in a contract."

Brads requested that the contract between him and the Church be declared valid and binding, that he be awarded compensatory damages in an amount equal to all sums due and owing under the contract up to the time of judgment, and that the Church be ordered to continue all benefits under the contract thereafter, *i.e.,* specific performance. Regarding this last element Brads requested, alternatively, a lump sum award, to include all amounts due in the future under the contract based upon Brads' life expectancy.

The trial court gave the following instruction to the jury on damages:

"The general rule for the measurement of damages is that the party whose contract was broken without his fault is entitled to fair and reasonable compensation for his loss. If you find that the Defendant breached the contract and the

Plaintiff did not breach the contract, you will decide what amount of money will fairly and reasonably compensate the Plaintiff for his actual loss resulting from the breach of the contract. The Plaintiff is entitled to be placed in the position in which he would have been if the contract had been fully performed. You will decide by the greater weight of the evidence what the Plaintiff would have received under the contract from the performance that was terminated.

"If you find for the Plaintiff and if you find that the contract provided for a lifetime payment of benefits, you may consider how long the Plaintiff is likely to live. The evidence of the life expectancy of people sixty-eight years of age is an estimate of the average remaining length of life of all persons in this country based upon a limited number of persons of that age. It is an incomplete figure and does not indicate the future life span of any individual. Such evidence is not conclusive, however, it may be considered along with all other evidence."

The Church objected to the trial court's instructions on damages because it allowed the jury to award a lump sum amount for all future payments owed by the Church under the contract, but not presently due, based on Brads' life expectancy.

The jury awarded lump sum damages to Brads in the amount of $151,674. The jury was not asked, and did not indicate, what portions of that total figure represented past due payments under the contract, what part represented payments due in the future under the contract, and what part represented allowance for office space, etc.

The Church subsequently moved for a new trial on the issue of damages or, in the alternative, for a reduction in the damage award, i.e., remittitur. The Church argued that the proper measure of damages was the sum of all past due payments under the contract, plus a continuation of payments to Brads in the future under the terms of the contract, or specific performance. The court denied these motions. The Church assigns error on those denials.

An excessive jury verdict in a breach of contract case ordinarily stems from mathematical miscalculations or an error in the application of the appropriate rule of damages. 2 Baldwin's Ohio Civil Practice (1990) 79, Text Section 49.07. We believe that the latter applies here.

The Restatement of the Law 2d, Contracts (1981) 102–103, Remedies, Section 344, states:

"Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee:

"(a) his 'expectation interest,' which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed,

"(b) his 'reliance interest,' which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made, or

"(c) his 'restitution interest,' which is his interest in having restored to him any benefit that he has conferred on the other party."

Brads has not sought damages for injury to his "restitution interest." He has sought damages for amounts due prior to judgment and unpaid, which are for injury to his "reliance interest." With respect to Brads' right to have future payments under the contract, a failure or refusal to pay injures his "expectation interest." The remedy ordered by the court should, to the extent possible, put Brads in as good a position with respect to those interests as he would have been in absent the failure or refusal of the Church to give him the benefit of his bargain.

In principle, a party's expectation interest represents the *actual* worth of the contract to him. Restatement, *supra,* at Comment *b.* Therefore, his recovery is limited to the loss he has actually suffered by reason of the breach, and he is not entitled to be placed in a *better* position than he would have been in had the breach not occurred. 22 American Jurisprudence 2d (1988) 68, Damages, Section 45.

Because damages for injury to an expectation interest are limited to actual loss, that loss must be established with reasonable certainty. Restatement, *supra,* at Section 352. Even when damages for breach are liquidated in an agreement, the amount provided must be reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. *Id.* at Section 356. Public policy will not permit liquidated damages in an amount that is unreasonably large in light of the actual loss caused by the breach, as that would constitute a penalty. *Id.*

One who suffers injury to an interest because of the misconduct or negligence of another is entitled to money damages for the loss suffered for so long as it continues. A permanent injury is presumed to create a loss that continues for the remainder of one's natural life. Because actual life remaining to a person cannot reasonably be determined, qualified mortality tables may be employed to arrive at a life expectancy for the person that is reasonably probable. Liquidated damages may then be awarded on that basis to compensate for future losses.

The injuries for which damages are awarded for future losses are ordinarily those arising from a tort, that is, a private civil wrong or injury arising from breach of a duty imposed, by general law or otherwise, upon all persons occupying the relation to each other which is involved in a given transaction. A breach of contract is not a tort. Future losses arising from a breach of contract may be the subject of a lump sum damages award. Even so, such damages are in compensation of the consequences of the breach to the extent that the value of those damages are capable of current determination.

 Generally, specific performance is available as an alternative to liquidated damages, but with reservations relating to certainty, fairness and enforceability. In most situations, liquidated damages are preferred because they are more certain, fair and enforceable. However, when an order for liquidated damages cannot reasonably achieve the aims of the parties to the contract or compensate for the actual loss caused by the breach, and specific performance reasonably can, the court abuses its discretion in ordering liquidated damages instead of specific performance.

In this case Brads' expectation interest consisted of the actual value of the payments he was due under the contract for the remainder of his life. The duration of Brads' life is difficult to establish with reasonable certainty. The trier of fact may employ life expectancy tables, as it did here, to find that period. But the result produced is valid only for the population as a whole. It portrays a probability, but does not, with reasonable certainty, demonstrate Brads' *actual* remaining life. Under these circumstances that matter cannot be *actually* determined. Yet it is crucial to the reasonableness of the damages ordered by the court.

An order to specifically perform the pension contract between these parties would, on the other hand, produce a remedy absolutely certain to restore the actual loss to his expectation interest that Brads has suffered by reason of the Church's breach. It would continue as long as Brads lives, but no longer. Brads is due that benefit even if he lives longer than his statistical life expectancy. Conversely, he is not entitled to a penny's worth of benefit in excess of his natural life, which may be shorter than Brads' current "life expectancy" according to mortality tables. Brads would be restored to the exact benefit of his bargain, but no more.

We find on these facts that the trial court erred when it instructed the jury that it could award lump sum damages for benefits due Brads in the future. The jury should have been instructed that if it found a contract, it must render a verdict in favor of Brads for specific performance of the contract for the remainder of Brads' lifetime. As the error crippled the entire charge, it was

prejudicial. See *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001.

It is not possible to reduce the jury's lump sum award by remittitur to cure the error concerned. While the jury clearly found a breach of contract, it is unclear how it apportioned its award of damages between the several claims. Therefore, we must reverse the jury's verdict as to the amount of damages and remand for a new trial on damages only. The finding that a binding contract existed to pay retirement benefits for life is not affected by our reversal. On remand, the trial court should enter the judgment for specific performance as to future retirement benefits discussed above, and conduct a new trial as to the other damage claims. The fourth assignment of error is sustained.

For its fifth assignment of error First Baptist Church claims:

"The trial court erred in failing to correct errors of law, where there were errors of law at the trial that were brought to the attention of the trial court, and, therefore, defendant-appellant is entitled to a new trial."

In this assignment of error the Church argues that the trial court should have granted its motion for a new trial based upon three errors of law, the first of which reads:

"A. Over objection of Defendant–Appellant, the trial court erred in not instructing the jury that the written document, which was drafted by Plaintiff–Appellee, must be most strongly construed against the Plaintiff–Appellee, and any doubt or ambiguity must be construed in favor of Defendant–Appellant."

The Church complains about the trial court's refusal to give this requested jury instruction:

"It is a fundamental principle in the law that a written document consisting of language drafted by a party must be construed most strongly against that party. If you find that the plaintiff drafted the language contained in the 1980 document, then I instruct you as a matter of law that you must construe that document strictly against the plaintiff, and resolve any doubt or ambiguity in that 1980 document in favor of the church."

The instruction requested by the Church is premised upon a general rule of construction of contracts that if there is doubt or ambiguity in the language of a contract, the document is to be construed strictly against the party who prepared it or selected its language, and in favor of the party *who took no part in its preparation or in the selection of its language.* 18 Ohio Jurisprudence 3d (1980) 34, Contracts, Section 149.

The evidence in this case does not support the claim that Brads alone drafted all of the terms of the contract, Plaintiff's Exhibit 1, and that the Church took no

part in its preparation or the selection of its language. To the contrary, there is evidence indicating that the document was the result of a joint effort by Brads and the deacons of the Church.

Although requested jury instructions should ordinarily be given if they are correct statements of the law applicable to the facts in the case, *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828, the trial court in this case could have reasonably concluded that the evidence did not support the requested charge. Accordingly, the trial court correctly refused the requested charge and absent a showing that the court's decision was erroneous as a matter of law, we cannot interfere with the trial court's decision. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, syllabus.

The second alleged error of law reads:

"B. Over objection, the trial court erred in failing to instruct the jury on a provision in the Church Constitution, where the evidence demonstrated that the written document relied upon to establish a contract was intended to be governed by the Church Constitution."

■ The Church complains about the trial court's refusal to give its requested jury instruction number four, which contains the following quotation from Section 1, Article 6(B) of the Constitution of the Church:

"A statement of considerations shall be drawn up in writing by the committee and the pastor at the time of his call and shall be presented to the church for approval. Said statement shall include such considerations as salary, vacation, retirement, convention expenses and any others deemed advisable by the church or the pulpit committee. Said statement may be changed or altered by mutual agreement between the church and the pastor at any time. When mutual agreement cannot be reached, said statement may be changed by a two-thirds (⅔) majority of the members present and voting. Meeting necessitated by lack of mutual agreement can be held at any time after announcement of same shall have been made in two previous stated services of the church."

The instruction requested by the Church is premised on its argument that the Church constitution governed and controlled the contract between Brads and the Church and, in accordance with the above provision, that the Church had the right to terminate payments to Brads. The evidence presented by both Brads and the Church, however, was consistent in establishing that the Church constitution, while applying to active pastors, did not apply to retired pastors or retirement benefits paid to former pastors. Thus, the trial court could have reasonably concluded that the requested instruction had no application to the particular facts in this case and, accordingly, the court did not commit an error of law in refusing the instruction.

The third alleged error of law states:

"C. Over objection, the trial court erred in permitting Plaintiff–Appellee to use Exhibits during closing argument depicting cartoonish caricatures concerning Plaintiff–Appellee's termination with the Church, where that termination is protected by the First Amendment of the United States Constitution, and it only served to incite passion and prejudice in the jury."

The Church complains about the use by Brads' counsel, during closing argument, of two drawings, cartoon caricatures, to illustrate his argument and explain the evidence.

The Church first argues that its decision to dismiss a pastor or member from its membership is protected by the First Amendment to the United States Constitution and that such decisions are not reviewable by courts of law. A review of the record in this case clearly reveals that not only did all parties and the court agree with this general proposition but, more important, that the right of the Church to dismiss Brads from membership in the Church was never an issue in this case and that the trial court explicitly instructed the jury not to inquire into or consider that issue, in accordance with the Church's requested instruction number eight. The issue in this case is whether the church entered into a legally binding contract to pay Brads retirement benefits for life.

In the presentation of closing argument to the jury great latitude is afforded counsel. The determination of whether the permissible bounds of closing argument have been exceeded is a matter resting within the trial court's sound discretion. Such a decision will not be reversed on appeal absent a showing that the trial court abused its discretion. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313. An abuse of discretion means an arbitrary, unreasonable or unconscionable action on the part of the court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

In argument to the jury counsel may utilize diagrams or illustrations, *i.e.,* visual aids, not admitted into evidence, for the purpose of illustrating his argument or explaining the evidence. *Miller v. Loy* (1956), 101 Ohio App. 405, 1 O.O.2d 331, 140 N.E.2d 38. At trial the Church's sole objection was that the two drawings in question here were inflammatory. The trial court disagreed. We have examined the two drawings and, like the trial court, do not find them inflammatory. The drawings were simply used to illustrate the argument of Brads, much the same as writing on a blackboard. We see no abuse of discretion in the trial court's ruling.

This assignment of error is overruled.

Having sustained the fourth assignment of error, we reverse the judgment of the trial court as to the damages awarded and remand the case to the trial court for entry of judgment of specific performance as to future retirement benefits, and for a new trial on the other damage claims, consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WOLFF and FAIN, JJ., concur.