File Name: 11a0694n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 10-3447**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Sep 29, 2011***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| RICHARD J. MORIARTY, Executor and Trustee of the Estate of Dorothy Carey and Milburn K. Carey, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| EQUISEARCH SERVICES, INC.; EQUISEARCH ACQUISITION, INC.; LEE ROTHMAN; PRINCIPAL FINANCIAL GROUP, INC., | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. This suit arises from Defendants' alleged failure to timely deliver approximately 9,000 shares of stock to its rightful owner. Richard J. Moriarty, in his capacity as an executor and trustee, sued Defendants for breach of contract, various state-law statutory violations, and fraud. The district court granted in part a motion to dismiss and, after discovery, granted Defendants summary judgment on the remaining claims. We affirm.

I.

This is a case of "found money." In 2001, Principal Financial Group, Inc. ("PFG") demutualized. Under its conversion plan, PFG distributed its excess capital to policyholders in the form of cash, PFG stock, or policy credits, depending on the policyholder's preference. PFG inadvertently failed to notify one of its policyholders, the Perma Seating Retirement Trust ("Trust"), of the demutualization. As a result, no one associated with the Trust—including its only living beneficiary, Dorothy Carey—instructed PFG on how to distribute the Trust's share of PFG's excess capital. PFG chose to issue stock to the Trust, valued at $167,573, rather than utilize cash or policy credits.

Carey died in 2003, unaware that the Trust owned PFG stock or that PFG's transfer agent was holding the stock. Moriarty became the executor of Carey's estate and remained similarly uninformed.

Several years later, PFG's transfer agent hired Equisearch Services, Inc. ("Equisearch Services") to find the stock's owner. In May 2007, an Equisearch Services employee, Lee Rothman, notified Moriarty that Equisearch Services had located an asset belonging to the Trust. Without revealing the asset's origin, Rothman told Moriarty that its value exceeded $50,000 and agreed to recover it in exchange for a 25% search fee. After unsuccessfully attempting to negotiate a fee reduction, Moriarty signed, as trustee for the Dorothy Carey Trust, an Agreement for Asset Location.

Rothman then revealed to Moriarty the nature of the asset—PFG stock. Moriarty authorized Equisearch Services to recover the stock, which by 2007 had appreciated in value to $573,000, and sell it. Equisearch sold the stock and, after deducting its 25% search fee, paid the net amount to Moriarty. Complaining that the decline in the stock's value—between the time Rothman first contacted him and the sale of the stock in August 2007—shortchanged Carey's estate, Moriarty sued Rothman, Equisearch Services, and Equisearch Acquisition, Inc. (collectively, "Equisearch"); and PFG. He alleged breach of contract, violations of Delaware and Ohio statutes, and fraud, and he sought to recover the search fee and damages.

The district court granted PFG's and Equisearch's summary judgment motions, denied Moriarty's, and Moriarty appealed. Reviewing de novo and construing the facts favorably to Moriarty, we affirm.

II.

A.       Count 1—Breach of the "Stock" Contract

The district court held that Moriarty failed to prove a necessary element of his breach-of-contract claim—damages—and accordingly granted Defendants summary judgment on Count 1. We affirm the district court on this count because most of Moriarty's appellate arguments differ from those raised below, and with respect to the argument he did raise before the district court, we find no error in the district court's analysis.

Before the district court, Moriarty asserted that PFG breached a stock agreement—on its own and through its alleged agent, Equisearch—both when it failed to notify Carey of her demutualization rights and again when it failed to timely deliver the PFG stock. This breach, Moriarty contended, damaged the estate in two ways: (1) by obligating it to pay the Equisearch fee and (2) through the stock's devaluation. The parties disagreed as to whether Ohio's or Iowa's damages law should govern the breach-of-contract claim. The district court, however, held that Moriarty failed to establish damages under either state's law because he did not show that the estate "suffered any pecuniary loss 'but for' PFG's alleged breach."

Moriarty now abandons both Iowa and Ohio law, asking this court to apply Delaware damages law. We decline to review this latest choice-of-law argument, deeming it forfeited by Moriarty's failure to raise it before the district court. *See Marr v. Fields*, 420 F. App'x 499, 500 n.1 (6th Cir. 2011).

And as for the district court's damages analysis under Ohio and Iowa law, we find no error. Ohio law limits a non-breaching party's recovery to "actual" or "expectation" damages—that is, damages that put the injured party "in as good a position as it would have been in but for the breach"—and requires the injured party to prove these damages with reasonable certainty. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996). Iowa law accords. *See Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 831 (Iowa 1998).

- 4 -

We therefore evaluate what financial position Carey's estate would have been in absent the alleged breach.

Moriarty's damages claim for the difference between the stock's value upon notice to him ($573,000) and the amount he received ($398,908) overlooks the relevant inquiry. The "but for" damages rule asks what would have occurred if PFG had contacted Carey during the 2001 demutualization: Carey could have elected to receive stock, cash, or policy credits. We take these scenarios in reverse order, and we reject Moriarty's argument that the alleged breach left the estate worse off.

Moriarty does not argue that Carey might have elected policy credits so we dispense with that scenario easily. Had Carey elected to receive cash, the record shows that she would have received $167,573 to invest. But in the absence of evidence that a return on that invested cash would have exceeded the $398,908 that the estate eventually recovered, this cash-distribution scenario fails to support a damages award. *See id.*; *Brads v. First Baptist Church of Germantown*, 624 N.E.2d 737, 745 (Ohio Ct. App. 1993).

Finally, had Carey elected to receive stock upon demutualization, Moriarty's uncontradicted testimony suggests that he would have sold it in 2003 when she died. Again, though, he provided *no* evidence about the stock's value in 2003 or what return he might have received after investing the sale proceeds. He thus failed to establish with *any* certainty—let alone reasonable certainty—that the total return to the estate would have exceeded the $398,908 the estate received. Having failed

to prove that the breach left him worse off, Moriarty may not recover damages on behalf of Carey's estate.

Moriarty persists, however, contending that PFG breached the contract *twice*: once in 2001 when it failed to notify Carey of her rights, and again in 2007 when it allowed Equisearch to extract a fee before delivering the stock to him. Thus, Moriarty concludes, we should measure damages from the date of the second breach, when the stock's value exceeded $573,000.

For two reasons, we decline to measure damages from the purported second breach. First, Moriarty offers no authority for bypassing the 2001 breach in favor of measuring damages from the 2007 breach; the only Iowa and Ohio cases that he cites discuss damages for the tort of conversion, not breach of contract. Second, under the "but for" damages test, the relevant breach occurred in 2001. PFG could not have committed the 2007 breach had it not committed the first: if PFG had contacted Carey in 2001, PFG's transfer agent would not have hired Equisearch, obviating damages from Equisearch's 2007 conduct.

In the absence of provable damages, we uphold the grant of summary judgment to Defendants on the breach-of-the-stock-contract claim.

B.      Count 2—Violations of Delaware Securities Statutes

Count 2 recasts PFG's and Equisearch's alleged failure to deliver the stock as various violations of the investment-securities article of Delaware's Uniform Commercial Code, including

Del. Code Ann. tit. 6, §§ 8-104(a)(1), 8-108(b)(4)(ii), 8-108(c)(2), 8-204(2), and 8-301(b)(1). We

affirm the district court's grant of summary judgment to Defendants.

Moriarty first contends that, by violating the Delaware statutes, Defendants breached an

implied contract under Delaware law. As discussed above, however, Moriarty failed to argue before

the district court that Delaware law underpinned his "stock contract" with Defendants. Nor did he

argue that the Delaware statutes supported an implied contract theory. Moriarty's argument here

thus amounts, at most, to the following: whatever "contract" for stock he had with Defendants, it

required compliance with these Delaware statutes. Even under that vague theory, Moriarty runs into

the same problem as in Count 1—either Iowa or Ohio damages law governs his claim, and he failed

to prove damages under the law of either jurisdiction.

Moriarty also appears to argue that the Delaware statutory violations give rise to a

freestanding claim. We reject this argument because he fails to explain how these statutory

violations, when severed from a breach-of-contract claim, afford him a cause of action. The district

court thus properly granted Defendants summary judgment on Moriarty's claim alleging violations

of Delaware securities statutes.

C.      Count 3—Violation of the Ohio Consumer Sales Practices Act

The district court granted Equisearch summary judgment on this count; Moriarty does not

appear to appeal that portion of the court's decision.

D.      Count 4—Breach of the Agreement for Asset Location

The district court also granted Equisearch summary judgment on this count. Again, Moriarty does not appear to appeal that portion of the court's decision, since he fails to mention the Agreement for Asset Location anywhere in his breach-of-contract analysis.

E.      Count 5—Fraud

Moriarty's complaint alleged that both PFG and Equisearch committed fraud in inducing him to sign the Agreement for Asset Location because both companies knew the identity and location of the asset all along. Because the district court dismissed portions of Count 5 against PFG and granted summary judgment with respect to others, we address PFG's and Equisearch's alleged fraud separately. But, again, we affirm the district court's grant of summary judgment to both.

1.      PFG's Alleged Fraud

Throughout this litigation, Moriarty premised Count 5 against PFG on an unsuccessful theory of respondeat superior liability. In granting a pre-discovery motion to dismiss, the district court held that Count 5 "fails to state a claim against PFG to the extent the claim depends on an agency relationship between PFG and Equisearch." The court allowed the claim to proceed, however, "to the extent the claim is asserted directly against PFG." Despite this ruling, at summary judgment Moriarty continued to ground his fraud claim against PFG solely "on an alleged agency relationship between PFG and Equisearch," prompting the district court to grant PFG summary judgment without

addressing the merits of Moriarty's agency argument. And in challenging the grant of summary judgment here, he resurrects his argument that Equisearch acted as PFG's agent, making PFG liable for Equisearch's fraud.

Procedural deficiencies in Moriarty's case preclude our review of the respondeat-superior-liability issue. The district court did not rule at *summary judgment* that Moriarty failed to establish an agency relationship between PFG and Equisearch; rather, it held only that it would not revisit its previous decision to partially dismiss Count 5 for Moriarty's *failure to allege* that relationship. The district court, having dismissed the pertinent portions of Count 5, properly declined to rule on the agency issue at summary judgment. In addition, Moriarty failed to appeal the dismissal order as would have been necessary to invoke our review of respondeat superior liability for fraud. We therefore affirm the grant of summary judgment to PFG on Count 5.

### 2. Equisearch's Alleged Fraud

Moriarty contends that Equisearch committed fraud (a) when it misrepresented the value of the stock as merely exceeding $50,000, and (b) when it failed to disclose the nature of the asset. The district court disagreed and granted Equisearch summary judgment.

For a fraud claim to survive summary judgment, a plaintiff must prove the following elements: (1) a material misrepresentation or concealment of fact, (2) defendant's knowledge of the falsity of the statement or his reckless disregard for its truth, (3) defendant's intent to mislead

plaintiff, (4) plaintiff's justifiable reliance on the misrepresentation or concealment, and (5) injury.

*See State ex rel. Illuminating Co. v. Cuyahoga Cnty. Ct. of Common Pleas*, 776 N.E.2d 92, 97–98

(Ohio 2002) (per curiam). We find no error in the district court's conclusion that Moriarty failed to

establish all elements of his claim.

        a.        Misrepresentation of Fact

Moriarty contends here, as he did below, that Equisearch committed fraud when—knowing

that the value of the asset surpassed $573,000—it told him only that the asset's value "exceeded

$50,000." The district court, finding multiple insufficiencies in Moriarty's evidence, held that he

failed to establish three elements of this fraud-by-misrepresentation theory: the false or misleading

nature of the statement, Equisearch's knowledge of its falsity, and his reliance on the statement to

his detriment. We agree that Moriarty failed to establish that the statement was false or misleading.

Equisearch's representation was true: the value of the stock—approximately $573,000—in fact

exceeded $50,000.

Moriarty nonetheless argues that the gross understatement of the value constitutes "a prima

facie case of fraud." But he offers no Ohio authority—the law of the relevant jurisdiction—for this

argument. And the only case that he cites, *Carton v. Choice Point, Inc.*, 482 F. Supp. 2d 533 (D.N.J.

2007), fails to persuade us that Ohio courts would recognize his theory: *Carton* involved non-

binding New Jersey precedent; the court ruled on a motion to dismiss, rather than a motion for

summary judgment; and the decision does not explain *how* the defendants' representations about an asset's value misled the plaintiffs. *See id.* at 535–36.

### b. Concealment of Fact

Last, Moriarty asserts that Equisearch committed fraud when it concealed from him the nature of the asset; more precisely, when it failed to disclose the fact that the "asset" that it had located was actually PFG stock. The district court again disagreed, holding that Moriarty failed to establish Equisearch's duty to disclose the precise nature of the asset.

A concealment of fact constitutes fraud only if, among other things, the defendant has a duty to disclose that fact. *State ex rel. Illuminating Co.*, 776 N.E.2d at 97–98. But establishing a duty to disclose is no easy task: disclosure obligations arise primarily in situations that involve a fiduciary relationship. *Federated Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 855 (Ohio Ct. App. 2000).

As the district court held, Moriarty failed to show that Equisearch acted as a fiduciary and, consequently, that it owed him disclosure obligations. Moriarty advances a single theory to support Equisearch's alleged duty to disclose the nature of the asset: that Equisearch, as PFG's agent or subagent, must carry out PFG's contractual and statutory obligations to register and deliver the stock. Under this theory, Equisearch's fiduciary duties hinge on PFG's fiduciary duties. Yet Moriarty fails to explain how PFG's *contractual and statutory* obligations entail *fiduciary* obligations, and he

wholly ignores the well-settled principle of Ohio law that a fiduciary relationship exists only where one party reposes "special confidence and trust . . . in the integrity and fidelity of another" who, through that special trust, acquires a "position of superiority or influence." *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 662 N.E.2d 1074, 1081 (Ohio 1996) (internal quotation marks and citation omitted).

## III.

We thus affirm the district court's grant of summary judgment.