**RASNICK et al., Appellees,**

v.

**TUBBS, Appellant.**

[Cite as *Rasnick v. Tubbs* (1998), 126 Ohio App.3d 431.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–97–46.

Decided Feb. 25, 1998.

432

*Cory, Meredith, Witter, Roush & Cheney* and *W. Thomas Roush,* for appellees.

*Thomas A. Mathews,* for appellant.

EVANS, Judge.

This appeal is brought by Dennis Tubbs, d.b.a. Denny's Street Shop ("appellant"), from a judgment of the Marion County Court of Common Pleas finding appellant liable to Charles and Tonyua Rasnick, d.b.a. Bennett & Sieg Auto Wrecking and d.b.a. The Rasnick Family Racing Team ("Rasnicks"), for $15,-903.68 in damages for breach of a contract.

The parties in this case entered into a contract for the construction of a race car. In December 1994, appellant orally agreed to construct a 1952 Chevy Pro Modified Race Car from a 1952 Sports Coupe already owned by the Rasnicks. In addition to paying appellant $52,820 for the job, the Rasnicks were to supply the engine, transmission, and clutch assembly for the race car. Any other parts purchased by the Rasnicks would be counted toward the agreed purchase price of $52,820.[1] The construction of the car was to be completed over twenty weeks' time. The Rasnicks agreed to make installments of $1,000 each week for appellant's labor, although the contract did not allocate a part of the purchase price for labor.

By May 12, 1995, the car was not completed and the parties saw the need to enter into a written contract. The written contract embodied substantially the same terms as the oral agreement; however, it provided that appellant would complete construction of the race car within six weeks of receiving the wheels and tires. When the completed race car was finished, as defined in the contract, the Rasnicks would pay the balance due under the contract in a lump sum.

The evidence produced at trial reveals that the wheels and tires were delivered to appellant's shop on or about May 26, 1995. Six weeks after this date the car

---

1. We note that although the contract provided that parts purchased by Denny Tubbs would be "deducted" from the $52,820, such a provision makes no sense. Tubbs was responsible for building the race car and, therefore, had a duty to purchase the parts necessary to accomplish this task. Presumably, the parts would be purchased out of the funds advanced by the Rasnicks. A purchase of parts by Tubbs would not reduce the amount of money owed by the Rasnicks.

was still not completed. Nevertheless, the Rasnicks continued to make $1,000 payments to appellant, and appellant continued to work intermittently on the car. By February 29, 1996, the Rasnicks had paid approximately $49,619.25 toward the contract price,[2] and the car was still not finished. A meeting was called by the parties. According to the Rasnicks and one other witness, appellant informed the Rasnicks that he would not finish construction of the race car unless he was paid an additional $20,000. Furthermore, appellant stated that he could not guarantee that the costs to complete the car would not exceed this amount. Refusing to pay more than the contracted price, the Rasnicks removed the partially constructed race car from appellant's shop, with appellant's consent, and subsequently took it to another mechanic for completion. At trial, appellant denied these statements and claimed that he could have finished the car for $5,609.70.

On April 4, 1996, the Rasnicks filed a complaint in the Court of Common Pleas of Marion County, claiming that appellant was in breach of contract and seeking damages in the amount of $25,000, which represented their cost to have the car completed at another shop. A three-day bench trial commenced on February 27, 1997. On June 5, 1997, the trial court issued its judgment entry, granting the Rasnicks $15,903.68 in damages.

Appellant now appeals this decision, asserting two assignments of error.

"Assignment of Error No. One

"The judgment below is contrary to the manifest weight of the evidence and should be reversed because there was no competent credible evidence to establish that the parties had a meeting of the minds and therefore a specific contract that defendant breached that would entitle plaintiff[s] to damages."

Appellant's first assignment of error alleges that the trial court erred in finding a binding contract existed in this case. To the contrary, we find that the trial court had ample evidence before it to determine the existence of a contract.

"A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty." *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996, 1006, citing Restatement of the Law 2d, Contracts (1981) 5, Section 1. In order for a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite, and there must be a meeting of the minds of both parties. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of*

---

2. Although the trial court made no findings as to the cost of parts purchased by the parties, our review of the records supports the conclusion that the Rasnicks paid approximately $11,899.25 for parts and $37,720 in weekly installments to appellant.

*Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137. Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance. *Ford,* 86 Ohio App.3d at 380, 620 N.E.2d at 1006. Normally, mutual assent is effected by offer and acceptance. *Id.*

■ The record in this case is replete with evidence that the parties were of one mind concerning the agreement for the construction of the race car. What began as an oral agreement wherein one party agreed to build a race car and the other party agreed to pay a sum of money in exchange was subsequently put down in a written document entitled a "contract." The terms of the contract were certain and definite. It was stated that the total expenditure by the Rasnicks was to be $52,820, for which they would receive a race car. This price included the cost of parts necessary to complete the car with the exception of the motor, transmission, and clutch assembly. Other parts supplied by the Rasnicks would be deducted from the total purchase price. The Rasnicks agreed to make weekly payments of $1,000 for appellant's labor costs,[3] and appellant was to complete the car within six weeks of receiving the wheels and tires. While the deadline for completion of the car was continually extended, this modification was by agreement of the parties. The parties had a meeting of the minds as to these terms. We find that the record supports the trial court's determination that the parties entered into a binding contract for the construction of a race car. Consequently, appellant's first assignment of error is overruled.

"Assignment of Error No. Two

"The court below erred as a matter of law by failing to deduct the costs of the parts provided by defendant Tubbs in determining the amount of damages awarded."

■■ It is axiomatic that a claimant seeking to recover for a breach of contract must show injuries as a result of the breach in order to recover damages from the breaching party. *Metro. Life Ins. Co. v. Triskett Illinois, Inc.* (1994), 97 Ohio App.3d 228, 235, 646 N.E.2d 528, 532. Damages are not awarded for a mere breach alone. In this case, appellant's failure to fulfill his obligations under the

---

**3.** This weekly "labor" payment clause is a bit confusing given that the parties clearly agreed to have appellant build a race car for the lump sum price of $52,820. There is no indication in the record that "X" amount of the contract price would be for labor and "Y" amount for parts, nor do we find the contract divisible in this manner. Since the weekly amount the Rasnicks paid in "labor" continued to mount as the time frame for completion of their car expanded, the view that these payments truly represented some predetermined labor cost is not supported. Rather, given the other contract provisions and the evidence of the parties' interactions, it appears that the $1,000 payments made weekly by the Rasnicks are more accurately described as installment payments to be used by appellant as he saw fit for the construction of the car.

contract resulted in damage to the Rasnicks. The Rasnicks were forced to find another mechanic to finish their car and were faced with thousands of dollars of additional expense. They sought to recover these compensatory costs from appellant. However, when the trial court determined the amount of damages the Rasnicks were entitled to as compensation for appellant's breach of contract, it failed to consider the cost it would take for the Rasnicks to complete their race car. Instead, it appears that the trial court attempted to restore to the Rasnicks the excess monies (benefit) that they had conferred on appellant, thereby granting them restitution damages.

The trial court calculated damages by first determining that the total cost of parts necessary to build the race car was $23,731.57. Deducting this amount from the contract price to be paid by the Rasnicks ($52,820), the court figured that appellant was to receive $29,088.43 for his labor on the project. The trial court then concluded that since the race car was seventy-five-percent complete, appellant should have received only seventy-five percent of $29,088.43, or $21,816.32. Given that the Rasnicks paid him $37,720 for his labor, the trial court found that appellant was overpaid $15,903.68 and awarded the Rasnicks this amount in damages.

The conclusions of law contained in the trial court's judgment entry stated:

"2. Since defendant has been overpaid $15,903.68, it is logical to assume that figure will compensate the plaintiff[s] and allow the plaintiff[s] to complete the vehicle based on the original agreement of the parties."

We find the trial court's determination of damages to be in error for the following reasons. First, even assuming, *arguendo*, that restitution damages were the correct remedy in this case, the trial court's formula fails to consider costs other than labor incurred by appellant and otherwise fails to employ figures and percentages that can be supported by the record. The evidence at trial was that appellant purchased some of the parts that ultimately comprised the Rasnicks' car; however, the court's award of damages fails to account for these expenditures.[4] To that extent, we sustain appellant's second assignment of error.

■ Moreover, we can find no evidence in the record justifying the trial court's conclusion that appellant had completed seventy-five percent of the race car construction. Nor does the court explain how it determined that the total cost of parts necessary to complete the car would be $23,731.57. Our review of the

---

4. We are proceeding, for the moment, on the trial court's assumption that costs of labor and parts are identifiable and separable under this contract. Under this assumption, our statement that appellant should have been reimbursed for the parts he put into the Rasnicks' car is true. However, as we noted earlier, we do not find the contract in this case divisible in this manner.

record could produce no evidence to support this figure. We recognize that judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. However, as stated above, we find no evidence to support the trial court's determination of damages. Therefore, we must vacate the trial court's award of damages.

Second, we fail to see the logic in the trial court's assumption that the Rasnicks could have their car completed "based on the original agreement of the parties" by another mechanic at the same price they agreed to pay appellant. This statement ignores the fact that not every auto body shop charges the same for labor or has the same markup on parts, as was demonstrated by the testimony and evidence at trial. Furthermore, there was some evidence that appellant may have taken on the race car construction at a lowered price because he thought he would get some advertising benefit from the deal.

█ This leads us to the final problem with the trial court's award, which is that it fails to give the Rasnicks the compensatory or expectation damages they sought in their complaint. Generally, a party injured by a breach of contract is entitled to his expectation interest or "his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." Restatement of the Law 2d, Contracts (1981) 102–103, Section 344. The fact is that had the contract in this case been performed the Rasnicks would have paid $52,820 for a completed race car. While the trial court's judgment entry cited the often-used principle in contract law that "money damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract been performed," the trial court's decision fails to ensure that the Rasnicks reap the benefit of their bargain.

█ The measure of damages suggested by the Restatement for compensating an expectation interest is calculated as follows:

"(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

"(b) any other loss, including incidental or consequential loss, caused by the breach, less

"(c) any cost or other loss that he has avoided by not having to perform." Restatement, *supra*, at Section 347, Comment *e*, Illustration 12; see *Livi Steel, Inc. v. Bank One, Youngstown, N.A.* (1989), 65 Ohio App.3d 581, 589, 584 N.E.2d 1267, 1272.

█ In this case, the loss in value is the difference between the value of performance rendered without a breach and the value of performance as it was

actually rendered. This loss in value is difficult to determine with any certainty, since little if any evidence was presented at trial about the value of appellant's partial performance. Moreover, evidence regarding the percentage of appellant's partial performance was conflicting and did not support the court's finding of seventy-five percent in any event. Because damages for injury to an expectation interest are limited to actual loss, the evidence must establish that loss with reasonable certainty. Restatement, *supra*, at Section 352; see *Brads v. First Baptist Church of Germantown, Ohio* (1993), 89 Ohio App.3d 328, 339, 624 N.E.2d 737, 745.

Because the loss has not been demonstrated with sufficient certainty, the Rasnicks may recover damages based on "the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value." Restatement, *supra*, at Section 348(2)(b) and Comment *c*, Illustration 2. We find that the record in this case provides evidence regarding such costs. However, it is up to the trial court to determine exactly what value to assign as completion costs, since there was evidence that some expenses incurred by the Rasnicks when finishing the race car may have been avoided.[5] Once the trial court determines the reasonable cost of completing performance, this amount must be decreased by the value of the cost avoided by the Rasnicks. This requires that the trial court determine how much of the original contract price the Rasnicks have paid. The remaining amount that was unpaid under the contract are the costs avoided and must be subtracted from the damages awarded the Rasnicks for completing construction of the race car.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we vacate the judgment of the trial court as to the award of damages and remand the cause to the trial court for further proceedings not inconsistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

*Judgment affirmed in part,*
*vacated in part*
*and cause remanded.*

SHAW, P.J., and THOMAS F. BRYANT, J., concur.

---

5. For example, there was testimony in the record that the Rasnicks failed to adequately protect the race car from moisture after removing it from appellant's shop. As a result, rust accumulated on parts of the car that had to be removed before the car could be completed. There was also some controversy as to whether some of appellant's work was done incorrectly, thereby necessitating that the Rasnicks incur some additional costs to correct the defects in construction. Whether these costs are found to be necessary and what values the court wants to assign to them based on the record are judgments left to the trial court as finder of fact.