JOURNAL ENTRY and OPINION
Defendant-appellant Tony Headen appeals from the trial court's decision finding him liable to plaintiff-appellee, The Window Guy, in the amount of $1,261. For the reasons below, we reverse and remand.
On June 27, 2000, Headen entered into a contract whereby the plaintiff agreed to install thirteen windows at Headen's home. The specifications set forth in the contract state:
 "13 TOTAL WINDOWS. SILVER LINE WINDOW FEATURES INCLUDE WHITE WELDED REINFORCED FRAME AND SASH, 7/8 INSULATED ARGON FILLED AND LOW E GLASS, CAN ACTION LOCKS, LIMIT LOCKS 1/2 FIBERGLASS SCREEN, CHESTNUT CASING COVERAGE ON EXTERIOR, COLONIAL GRIDS IN WHITE, SIDE UNITS ONLY 3LT SLIDER FOAM FILLED NO ADDITIONAL COST, AND HAUL AWAY DEBRIS, LIFETIME WARRANTY ON GLASS, UNIT, AND INSTALLATION"
Pursuant to the contract, Headen agreed to pay $3,887 for the windows. Headen qualified for a HUD grant, which was administered by the City of Garfield Heights and required that the window installation be completed by August 31, 2000. The grant would pay for 50% of the cost of the windows. Headen was required to deposit $1,943.50 with the city; the city then paid $750 of that deposit to the plaintiff as a down payment, and the remainder would be paid by the city upon completion of the job.
Headen maintains that the Silver Line windows referenced in the contract refer to a specific type of window with the registered trademark of Silver Line. The plaintiff maintains that it has a grading system for the windows that it sells, and that the three tiers of this grading system are Gold Line, Silver Line, and Bronze Line. Thus, the plaintiff contends that Headen did not order a particular brand of window, but ordered a Silver Line grade of window which is what he received.
The windows were installed between August 15 and August 18, 2000. Ron Amato, the plaintiff's representative testified that on the last day of installation he noticed that the type of glass was not "argon/low e" as was specified in the contract. He informed Headen of the problem and offered to fix it, but Headen ordered him off the property.
Despite Headen's reaction, Amato contacted the manufacturer, received the proper glass, and testified that he could have replaced the glass within minutes because the frames and sashes were already in place. In addition, Amato contacted the city to request an extension of time for the installation and the city granted a thirty-day extension. Amato was never able to replace the windows because Headen did not return his phone calls.
The city returned Headen's deposit to him, less the $750 that had been paid to the plaintiff. Headen was also informed that his grant was canceled due to the failure to complete the project by September 30, 2000.
Headen maintains that on the first day that Amato began the installation process, Headen noticed that the screens and limit locks on the windows were different from those on the sample window that Amato had shown him when he signed the contract. Headen testified that Amato agreed, and promised that he would replace the screens and the limit locks.
Headen testified that after the installation was completed, Amato never attempted to contact him and that the next time that he heard from Amato was when the plaintiff sued him in small claims court.
On September 20, 2000, the plaintiff filed a complaint in the Garfield Heights Municipal Court, Small Claims Division, seeking the amount of $2,812. On October 12, 2000, Headen filed a counterclaim seeking $3,000 for breach of contract. On November 1, 2000, the trial court filed a nuncpro tunc judgment entry, finding in favor of the plaintiff in the amount of $3,000.
On November 6, 2000, Headen filed objections to the magistrate's decision, arguing that the trial court erred in its decision, and failed to dispose of his counterclaim. The trial court granted Headen's objections and ordered a trial de novo before the court.
On November 30, 2000, Headen filed an amended counterclaim claiming breach of contract and unfair and deceptive practices in violation of R.C. 1345.02 and 1345.03. He sought return of the $750 deposit paid to the plaintiff, an award in the amount of the HUD grant which he had lost, attorney's fees, and costs.
The matter was transferred from small claims to the regular docket, and after a trial on the merits, the trial court granted judgment in favor of the plaintiff in the amount of $3,137 and in favor of Headen in the amount of $1,876. As a result, the court found Headen liable to the plaintiff in the amount of $1,261.
Headen appeals this decision, raising the following assignment of error:
 I. THE TRIAL COURT ERRED IN FINDING FOR THE WINDOW GUY ON ITS CLAIM AND IN THE COMPUTATION OF DAMAGES AWARDED DEFENDANT ON HIS COUNTERCLAIM.
Headen argues that the trial court erred in computing his damages at $1,876. At trial, Headen submitted an estimate from another window company that would charge $5,763 for the installation of thirteen Silver Line windows. Based on this estimate, the trial court determined that the "true value" of the windows in the Headen/Window Guy contract is $5,763. Thus, the trial court subtracted the actual contract price of $3,887 from the estimate, $5,763, to determine that Headen is entitled to $1,876.
Headen argues that the trial court erred in offsetting his award by the original contract price. He maintains that he is entitled to the entire amount of $5,763.
As stated in Rasnick v. Tubbs (1998). 126 Ohio App.3d 431;710 N.E.2d 750:
 "Generally, a party injured by a breach of contract is entitled to his expectation interest, or `his interest in having the benefit of the bargain by being put in as good a position as he would have been in had the contract been performed.' Restatement of the Law 2d, Contracts (1981) 102-103, Section 344."
However, a party's recovery is limited to the loss he has actually suffered by reason of the breach. Brads v. First Baptist Church ofGermantown (1993), 89 Ohio App.3d 328; 624 N.E.2d 737.
Thus:
 It is axiomatic that a claimant seeking to recover for a breach of contract must show injuries as a result of the breach in order to recover damages from the breaching party. Rasnick v. Tubbs (1998), 126 Ohio App.3d 431, 435; 710 N.E.2d 750, citing, Metropolitan Life Ins. Co. v. Triskett Illinois, Inc. (1994), 97 Ohio App.3d 228, 235, 646 N.E.2d 528. Damages are not awarded for a mere breach alone. Id.
Here, it is undisputed that the windows Headen received were of a lower quality than the windows specified in the contract because the windows did not have 7/8 insulated "low e/argon" glass as required in the contract specifications. Thus, the contract was breached by the plaintiff. However, Headen has failed to show how he has been damaged.
Headen has not replaced his windows; he merely presented the court with an estimate from one company, which shows that he would be charged $5,763 for replacement windows. However, he has not yet paid this amount, nor has he engaged the services of another window company.
Also, at trial both parties presented evidence which established that the undisputed value of the windows actually received by Headen is $2,284.77. Thus, despite the inferior quality of the windows, Headen received a set of windows valued at $2,284.77, for which he paid the plaintiff $750. Therefore, he was not injured by the breach, and the court erred in awarding him damages.
We also note that, although there is a discrepancy as to when it was discovered that the glass was not the glass specified in the contract, both parties did testify that the "flaw" was discovered during the installation process. In fact, Headen testified that he was aware of a problem on the first day of installation. However, he did not stop Amato from installing all thirteen windows.
Further, although Headen argues that he was injured by losing the HUD grant, he took no measures to get proper windows installed before the grant deadline passed. In fact, the plaintiff attempted to keep Headen from losing the grant by obtaining a thirty-day extension from the city, yet Headen failed to take advantage of the extension. Thus, he is not entitled to receive the balance of the grant which was canceled by the city. See F. Enterprises, Inc. v. Kentucky Fried Chicken Corp. (1976),47 Ohio St.2d 154 (a damage award should not include such damages that could have been avoided by reasonable affirmative action by the injured party.) Based on his own testimony, Headen has shown that he had an opportunity to mitigate his damages, yet failed to do so.
Accordingly, the trial court erred in awarding Headen $1,876, as he failed to establish any damages.
Headen also argues that the trial court erred in awarding the plaintiff $3,137. We agree. The $3,137 amount that the plaintiff was awarded represents the contract price less the $750 down payment paid by Headen. Thus, the trial court determined that the plaintiff was entitled to the full contract price. In justifying this award, the trial court determined that the windows received by Headen are worth $2,284.77 and that Amato's labor was valued at $1,603.23. It is undisputed that the windows received by Headen are valued at $2,284.77; however, there is no basis for the court's determination of the value of Amato's labor. No evidence was produced at trial regarding the cost of labor. Further, it is clear that the $1,603.23[1] figure is merely the difference between the contract price, $3,887, and the cost of the windows, $2,284.77.
Thus, because Headen did not receive the type of windows specified in the contract, the plaintiff was not entitled to receive the full contract price for which the parties had bargained.
Based on the foregoing, we find that the trial court erred in awarding Headen damages because he failed to show how he was damaged by the plaintiff's breach. We further find that the trial court erred in determining the amount to be awarded to the plaintiff. Accordingly, we reverse and remand for a determination of damages.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee the costs herein.
It is ordered that a special mandate be sent to the Garfield Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J. and ANNE L. KILBANE, J. CONCUR.
[1] The actual difference between these figures is $1,602.23.