NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0462n.06

No. 08-4593

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Jul 29, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| QSI-FOSTORIA D.C., LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| BACM 2001-1 CENTRAL PARK WEST, LLC, | ) | |
| | ) | ON APPEAL FROM THE |
| Intervenor-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| GENERAL ELECTRIC CAPITAL BUSINESS | ) | |
| ASSET FUNDING CORPORATION, | ) | |
| | ) | O P I N I O N |
| Defendant. | ) | |

BEFORE:     KEITH, BOGGS and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  This case arises out of a dispute between QSI-Fostoria D.C., LLC ("QSI") and General Electric Capital Asset Business Funding Corporation ("GE") for damages resulting from GE's failure to timely remove leased equipment from QSI's property.  The loss of rental income allegedly caused QSI to default on its mortgage, and QSI entered into a Deed in Lieu of Foreclosure Agreement with the mortgagee, BACM 2001-1 Central Park West, LLC ("BACM").  The Deed in Lieu of Foreclosure Agreement purported to transfer to BACM all of the property belonging to QSI.  However, QSI retained its action against GE for breach of contract and trespass without explicitly disclosing it to BACM.  QSI and GE eventually settled for $1.5 million.  In the

meantime, BACM had intervened and asserted an interest in QSI's action against GE. The district court ultimately awarded summary judgment to BACM, holding that QSI breached the "all property" warranty in the Deed in Lieu by not disclosing and conveying its interest in the action against GE. The court awarded the $1.5 million to BACM as damages for the breach. QSI has raised three issues on appeal, contending that: (1) the district court erred in holding that QSI breached the "all property" warranty; (2) there are triable issues of fact concerning whether BACM waived its right to strict enforcement of the warranty; and (3) there are questions of fact relating to BACM's recoverable damages. For the reasons that follow, we affirm the district court's judgment

# I

On December 13, 2000, QSI obtained an $8.5 million loan from Bridger Commercial Funding, LLC ("Bridger") to purchase property, including several buildings, located at 130 West Jones Road, in Fostoria, Ohio. After purchasing the Fostoria property, QSI entered into a lease agreement with Quality Farm & Fleet, which operated a warehouse and distribution center at the site. Quality Farm & Fleet, in turn, leased material handling equipment for its operations from GE. As part of the lease agreement between GE and Quality Farm & Fleet, GE and QSI entered into a "Landlord's Agreement and Waiver," by which GE agreed to remove its equipment within 60 days after written notice from QSI.

Quality Farm & Fleet filed for bankruptcy shortly after signing the lease, which prompted QSI to demand that GE remove its equipment on March 27, 2002. GE did not remove the equipment until June 15, 2003, approximately 13 months late. In the meantime, QSI filed a complaint against GE on August 28, 2002, seeking $126,041.67 per month for storage fees/rent for GE's failure to

remove its equipment.  On November 19, 2003, the district court ruled that QSI was entitled to compensation from GE, but held that there were outstanding questions of fact as to damages.

As a result of Quality Farm & Fleet's bankruptcy and subsequent cessation of rent payments, QSI defaulted on its mortgage. Bridger had by then transferred the QSI loan to a securitized pool of commercial mortgage loans, of which Wells Fargo Bank Minnesota, N.A. ("Wells Fargo") was the trustee.  Lennar Partners, Inc. ("Lennar") was the special servicer for the pool of loans.  Penina Tannenbaum was the Lennar employee in charge of administering and monitoring the QSI loan.  Bob Gersten was Tannenbaum's primary contact person at QSI.

After QSI defaulted on its mortgage, it entered into negotiations with Lennar for execution of a Deed in Lieu of Foreclosure Agreement ("Deed in Lieu").  At this time, Lennar formed BACM to take assignment of Wells Fargo's interest in the QSI loan, to sign the Deed in Lieu, and to take title to the property being conveyed by QSI.  In turn, BACM sold the property to a third party, in a transaction not material to the issues presented in this appeal.

Negotiations for the Deed in Lieu began in June 2003 when Suzanne Amaducci, an attorney working for Lennar, sent a proposed agreement to QSI.  Penina Tannenbaum had briefed Amaducci in preparation for the negotiations.  Although Tannenbaum had previously been informed by QSI's Bob Gersten that QSI had a claim against GE for lost rents, she did not inform Amaducci of any pending litigation against GE.  Tannenbaum later explained that she had either forgotten that Gersten mentioned the claim nine months earlier or that she "really didn't think much of it.  Nobody ever told [her] about potential large claims for money on it."  R. 235, Tannenbaum dep. at 126-27.

Indeed, months before the negotiations began, Gersten had sent e-mail communications to Tannenbaum about the dispute with GE. However, these messages gave no indication that QSI expected a substantial monetary recovery. On August 19, 2002, Gersten claimed to have sent Tannenbaum a letter stating that QSI had filed suit against GE to recoup storage fees/rent, and asked that any recovery "be used to pay for [QSI's] operating costs and legal expenses. Any excess monies would then go toward debt service." R. 204, Gersten dep. at 37, 50. Tannenbaum claimed not to have received this letter. R. 235 Tannenbaum dep. at 89-92. On September 4, 2002, Gersten sent, and Tannenbaum received, a list of QSI's monthly expenses. Attached to this list was a note indicating that the list did not include legal fees associated with the GE lawsuit. However, the note did not describe the lawsuit and Tannenbaum did not subsequently inquire about it.

Attorney Daniel LaValley negotiated the Deed in Lieu on behalf of QSI. The Deed in Lieu agreement was finalized and executed in July 2003. It contained, among other things, a provision that purported to convey all of QSI's property to BACM:

> Borrower intends to convey to Lender all of Borrower's right, title and interest in and to the Project and this transaction is not intended as a mortgage, trust conveyance, deed of trust or security interest of any kind. After the closing, Borrower will not have any further interest (including rights of redemption) or claims in and to the Project or to the proceeds and profits that may be derived therefrom. The Project being transferred to Lender represents all of the property, real or personal, owned by the Borrower and after the Closing Borrower shall have no debts or liabilities to any party. This Agreement and the transaction to occur hereunder are Borrower's free and voluntary acts, and Borrower is not acting under duress, under influence, misapprehension or misrepresentation by Lender.

R. 236 Ex. E, Deed in Lieu of Foreclosure Agreement § 9(l).[1] This "all property" warranty was

QSI's representation that the property listed in § 1 of the Deed in Lieu constituted all the real and

personal property interests owned by QSI. However, neither the §1 listing nor the § 9 "all property"

warranty included any express reference to QSI's already pending action against GE. During the

course of negotiations of several drafts of the Deed in Lieu, LaValley, though "fully conscious" of

the existence of the action against GE, never informed Amaducci that the "all property" provision

in the drafts did not include QSI's claims against GE. Further, LeValley admitted that he knew these

claims constituted property. In any discussions about QSI's action against GE, LaValley limited his

comments to the non-monetary purpose of the lawsuit, i.e., to force GE to remove the equipment.

In addition, although QSI had been involved in litigation with GE stemming from the

Fostoria property during the course of the Deed in Lieu negotiations, it did not communicate

settlement offers received from GE to Lennar or BACM. BACM did not learn of the possibility that

QSI's suit against GE could yield a substantial monetary recovery until after the Deed in Lieu had

been executed, when a GE employee contacted Lennar. This prompted a "disappointed"

Tannenbaum to call Gersten at QSI for an explanation. Gersten explained that when the suit was

filed QSI did not expect to get "any big money" out of it and that it was only because GE "took a

---

[1]"Project," as used throughout the Deed in Lieu Agreement, is defined in Recital A of the Agreement as referring collectively to the real property and improvements thereon located at 130 West Jones Road in Fostoria, of which Borrower (QSI) was the fee simple owner. Further, § 1 of the Agreement purports to list "without limitation" the interests included in "all of Borrower's right, title and interest in and to the Project."

really long time" to remove the equipment that QSI's monetary claims had increased in value.  R. 235, Tannenbaum dep. p. 57.

Shortly after BACM learned of QSI's lawsuit against GE and the potential for a monetary recovery, BACM filed a motion in the district court to intervene and substitute as party plaintiff on April 2, 2004.   The district court denied the motion to substitute, but granted the motion to intervene.  The court had already ruled in November 2003 that QSI was entitled to compensation in connection with GE's late removal of the equipment, but it had left damages to be determined at a later date.  In January 2006, a bench trial was commenced to determine QSI's damages.  Soon after QSI rested its case, it accepted GE's $1.5 million offer and the case was settled.

Meanwhile, BACM had filed cross-claims against QSI.  The district court ultimately ruled that QSI breached the "all property" warranty in the Deed in Lieu by failing to disclose and convey to BACM the pending claims against GE.  The court awarded the entire $1.5 million settlement recovery to BACM on January 17, 2007.  QSI's motion for reconsideration was denied on August 17, 2007.  QSI now appeals.

## II

### A.  Standard of Review

We review *de novo* an order granting summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court must view the evidence in the light most favorable to the non-moving party and draw all

reasonable inferences in its favor. *Id*. Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id*.

## B. Breach of Contract

The district court concluded that QSI breached the "all property" warranty in § 9 of the Deed in Lieu by retaining possession of the chose in action and prosecuting the action against GE. QSI took these actions to enforce interests stemming from its ownership of the Fostoria Distribution Center—interests which, the district court concluded, ought to have been included in the listing of interests conveyed to BACM under the Deed in Lieu, as set forth in § 1. Because the § 1 listing purported to be complete, but did not include QSI's pending action against GE, the court held that QSI breached the "all property" clause by not relinquishing its right of action against GE.

In challenging this ruling, QSI contends that it could not have breached the "all property" warranty by failing to expressly convey its right of action against GE in the Deed in Lieu for two reasons. First, insofar as its complaint against GE sought recovery of lost rental income due to GE's failure to timely remove its material handling equipment from the Fostoria facility, QSI contends this represents an interest that had already been assigned to BACM (via its predecessor, Bridger) through the mortgage that secured the $8.25 million loan made to QSI. Article 3 of the Mortgage and

Security Agreement purports to irrevocably assign to Bridger all of QSI's interests relating to leases of the property. Inasmuch as BACM had already been assigned the very rights QSI was trying to enforce in its action against GE, QSI maintains that it could not have breached the "all property" warranty by not expressly conveying those same rights again in the Deed in Lieu.

QSI's argument is self-contradictory. QSI contends it owned the right to proceed against GE, but insists that it cannot have breached the Deed in Lieu "all property" warranty by failing to convey and relinquish that right because BACM already owned it. Whatever the scope of the assignment of interests made in Article 3 of the Mortgage and Security Agreement, the fact remains that QSI, in continuing to cling to an interest stemming from its ownership and management of the Fostoria facility, violated its Deed in Lieu promise to convey all of its "right, title and interest" in the property. The district court directly addressed this argument in denying QSI's motion for reconsideration and correctly ruled that QSI's retention of the chose in action, an item of personal property under Ohio law, breached the "all property" representation. In this ruling we find no error.

In a second objection, QSI insists that its action against GE included, quite apart from its claim for breach of contract, a claim in tort (i.e., trespass) for recovery of loss-of-investment damages. The theory is that because GE delayed in removing the handling system from the facility, QSI was unable to attract a new tenant after Quality Farm and Fleet went into bankruptcy. As a consequence, QSI suffered loss-of-rent damages, which caused it to default on its mortgage and precipitated the Deed in Lieu of Foreclosure Agreement. QSI thus forfeited its original investment in the property—i.e., its $2,926,000 down payment— and contends this consequential loss, too, was proximately caused by GE's breach of contract or, alternatively, by GE's tortious trespass on the

premises. QSI contends this particular loss-of-investment injury did not occur until it forfeited title to the property pursuant to the Deed in Lieu. Because this loss did not occur until the Deed in Lieu was executed, QSI contends the right to seek compensation for this loss could not have been conveyed pursuant to the "all property" clause. Hence, the argument goes, its retention of this portion of its right of action against GE could not have been in violation of the "all property" warranty.

Yet, irrespective of *when* QSI's right to claim loss-of-investment damages arose, the trespass from which those damages allegedly resulted was clearly and undeniably actionable by QSI only as a function of its possessory interest in the Fostoria facility, i.e., an interest, among all of its other interests, that QSI purported to transfer to BACM in the Deed in Lieu. "Trespass is the unlawful entry upon the property of another." *Kramer v. Angel's Path, L.L.C.*, 882 N.E.2d 46, 54 (Ohio App. 6 Dist. 2007) (quoting *Chance v. BP Chems., Inc.*, 670 N.E.2d 985, 991 (Ohio 1996)). The elements of trespass include "(1) an unauthorized intentional act and (2) entry upon land in the possession of another." *Kramer*, 882 N.E.2d at 54 (quoting *Brown v. Scioto County Bd. of Comm'rs*, 622 N.E.2d 1153, 1161 (Ohio App. 4 Dist. 1993)). The asserted right to loss-of-investment damages did not, therefore, arise out of thin air, but stemmed from GE's unauthorized intrusion upon QSI's interest in the property, prior to the Deed in Lieu.

In other words, even if QSI's loss-of-investment injury did not arise, as a recoverable item of consequential damages, until after QSI conveyed all its interests to BACM in the Deed in Lieu, the trespass cause of action accrued while QSI still owned the property. The right to recover such consequential damages can hardly be divorced from the tort that allegedly caused them. The notion

that QSI was somehow entitled to quietly retain its right to claim loss-of-investment damages stemming from GE's trespass on QSI's property, after having purportedly conveyed all of its right, title and interest in the property to BACM, because the extent of those damages did not become clear until after the property was conveyed, is logically untenable.[2]

Moreover, irrespective of whether it is possible to tease out the various elements of damages that might have been recovered in the action against GE, it is clear that QSI's retention and prosecution of the action for loss-of-rent damages alone, quite apart from its pursuit of loss-of-investment damages, was in itself a breach of the "all property" warranty. This is reason enough to affirm the district court's holding that QSI breached the contract. The propriety of the court's award of damages flowing from that breach is a different question, addressed below.

## C. Waiver

QSI also argues that BACM waived its right to seek enforcement of the "all property" warranty and that there are genuine issues of material fact regarding this defense. QSI contends it had disclosed the existence of its dispute with GE to Penina Tannenbaum, the Lennar employee who was administering the defaulted QSI mortgage as early as July 2002, long before the Deed in Lieu negotiations began. Yet, BACM did not assert any interest in the action against GE until it moved to intervene in April 2004, long after the Deed in Lieu had been executed, in July 2003. The district

---

[2]Insofar as QSI could arguably seek recovery of consequential damages that BACM could not pursue, this is a matter that should have entered into the parties' negotiations of the Deed in Lieu, but did not, because of QSI's deliberate failure to make full disclosure.

court rejected QSI's waiver defense, holding that BACM had not, by words or conduct, expressed an intent to abandon its right to enforce the "all property" warranty of the Deed in Lieu.

"Waiver" is defined as the "voluntary relinquishment of a known right." *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Educ.*, 779 N.E.2d 216, 220 (Ohio 2002). A waiver must be intentional, with full knowledge of all the facts. *North Olmsted v. Eliza Jennings, Inc.*, 631 N.E.2d 1130, 1134 (Ohio App. 8 Dist. 1993). Although a waiver may be effected by express words or by conduct, mere silence will not amount to a waiver unless there is a duty to speak. *Id.* The party seeking to prove waiver bears the burden of showing clear and unequivocal evidence of such a purpose. *Id.*

QSI contends that BACM implied its waiver through inaction when its agent, Tannenbaum, despite being advised of the dispute between QSI and GE, failed to make further inquiry. In response, BACM points out that even though Tannenbaum was advised of QSI's dispute with GE regarding removal of equipment from the Fostoria facility, QSI did not disclose the possibility of a substantial monetary recovery. Indeed, it is undisputed that, even as the Deed in Lieu negotiations were ongoing between QSI and BACM, QSI did not disclose that GE had already made significant settlement offers (i.e, in the range of $40,000 - $50,000 per month) in the Fall of 2002. R. 236, Ex. I, Atkinson dep. pp. 6-8. Rather, Daniel LaValley, the attorney who negotiated the Deed in Lieu for QSI, referred to the suit against GE simply as "a suit to get GE's equipment out of the building." R. 209 LaValley dep. p. 18. He had no recollection of ever apprising Lennar or BACM that the suit also included claims for monetary damages. R. 234 LaValley dep. pp. 48, 60. LaValley recognized the monetary claims to be "property." *Id.* at 54-55. Nonetheless, it was LaValley's conscious intent,

in negotiating the Deed in Lieu, that QSI would retain the monetary claims against GE, although he did not remember ever discussing that with BACM. *Id.* at 57. Thus, based on this undisputed foundation, BACM argues that it could not be deemed to have waived its right to enforce the "all property" warranty in relation to QSI's monetary claims against GE, because it could not have voluntarily relinquished a claim of which it was unaware.

To this, QSI responds rather feebly that Lennar's employee, Tannenbaum, had been apprised of the dispute between QSI and GE, and BACM must bear the consequences of her neglect in failing to appreciate the potential value of the claims and in failing to make further inquiry. In other words, QSI argues that even though BACM may not actually have known about the significance of the action against GE, it should have, and its inaction in the face of this constructive knowledge is sufficient to make out a waiver.

QSI's argument ignores the fact that Tannenbaum was apprised of the dispute only superficially in the late Summer of 2002, when the lawsuit had just been filed and its value was indeterminate, and approximately nine months before BACM had even come into existence. QSI points to no evidence that BACM or its agents were ever advised of the potential monetary value of the action against GE. To be sure, Tannenbaum ought to have been more careful. Yet, QSI has not refuted the record evidence showing that neither Lennar nor BACM was ever provided a copy of QSI's complaint against GE or made aware of GE's settlement offers until after the Deed in Lieu was executed. Nor has QSI adduced evidence showing that it ever attempted to communicate its understanding that the "all property" warranty in the Deed in Lieu, despite the breadth of its language, excluded QSI's claims against GE such that QSI retained them.

QSI has adduced no more than a mere scintilla of evidence to support its waiver defense. A reasonable trier of fact could hardly find that BACM had full knowledge of all the facts and intentionally relinquished its right to enforce the "all property" warranty. Moreover, even accepting that evidence of constructive knowledge may support a waiver defense, *see*, *e.g.*, *Weaver v. Weaver*, 522 N.E.2d 574, 576 (Ohio App. 4 Dist. 1987), QSI has not shown that BACM had a duty to speak, such that its silence or inaction could be deemed clear and unequivocal evidence of waiver. There being no genuine issue of material fact, we hold that the district court properly rejected QSI's waiver defense.

### D. Damages

Having determined that QSI breached the "all property" warranty by wrongfully retaining its claims against GE, the district court awarded QSI's entire recovery from the litigation to BACM, i.e., the $1.5 million settlement amount, plus interest from the date GE paid the settlement proceeds to QSI. In denying QSI's motion for reconsideration, the court rejected arguments that BACM had not established its entitlement to the damages, that the award amounted to a windfall for BACM, and that, at the least, QSI should be allowed to recoup its attorneys' fees expended in achieving the recovery for BACM. QSI now renews these arguments on appeal.

First, QSI contends the record does not substantiate the finding that BACM actually sustained damages in the amount of $1.5 million. "As a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort." *Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 448 (Ohio App. 8 Dist. 1991).

Yet, under Ohio law, "a party injured by a breach of contract is entitled to his expectation interest or 'interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.' Restatement of the Law 2d, Contracts (1981) 102-03, Section 344." *Rasnick v. Tubbs*, 710 N.E.2d 750, 753-54 (Ohio App. 3 Dist. 1998).

The district court correctly concluded that had QSI performed as promised in its "all property" warranty, it would have conveyed to BACM its interest in the claims against GE, which ripened into the $1.5 million recovery. Moreover, the determination that this settlement amount represents the fair value of QSI's claims against GE is substantiated by QSI's own record evidence, estimating QSI's losses to be $1,555,155.96.

Yet, in its second objection, QSI contends that the settlement amount paid by GE may have included compensation for loss-of-investment damages claimed by QSI stemming from the loss of its equity in the property (represented by its forfeited $2,926,000 down payment), damages that BACM could not have claimed in its own right. This argument is unavailing for several reasons. First, the proposition that such a claim for loss-of-investment damages was properly before the court in the first place is suspect. QSI's original complaint against GE included no distinct claim or prayer for relief in the form of loss-of-investment damages. Nor did QSI seek leave to amend its complaint to specifically state such a claim or prayer for relief. To the extent QSI argues the loss-of-investment damages could have been recoverable in tort as a species of consequential damages caused by GE's trespass, it appears that such a tort theory of relief, growing out of a contractual relationship, would be barred by Ohio's economic loss doctrine. *See Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 64-65 (6th Cir. 2009). Further, where the settlement amount so closely approximates

QSI's own estimate of its loss-of-rent damages, QSI bears the burden of identifying some basis in

the record to conclude that the $1.5 million *may* have included damages for loss-of-investment

damages before the district court's facially sensible award can be vacated as erroneous. QSI has not

carried this burden; its argument is based on unsupported speculation, which is insufficient to

establish the existence of a genuine factual dispute.

Finally, QSI contends it is at least entitled to a set-off for the amount of attorneys' fees and

expenses reasonably incurred in successfully achieving the settlement with GE. The district court

acknowledged that the ultimate outcome of QSI's actions, winning a substantial recovery only to see

it awarded to BACM, was troublesome. Still, the court refused to award QSI its attorneys' fees and

costs, holding that its pursuit of the litigation after BACM had intervened was a calculated risk it

voluntarily undertook. QSI maintains this was error, citing *F. Enterprises, Inc. v. Kentucky Fried

Chicken Corp.*, 351 N.E.2d 121 (Ohio 1976), where the court observed:

> When a contract is repudiated at a time when the injured party has not yet
> performed, ordinarily a savings to the injured party occurs by reason of not having
> to perform his promise. Such savings is deducted from the compensation under the
> contract the injured party would have received from the breaching party had the
> contract been fully performed, since the injured party is only entitled to a damage
> award which places him in as good a position as he would have been had the contract
> been fully performed.

*Id.* at 125. QSI thus argues that if it had conveyed its interests in the action against GE, BACM

would have incurred expenses, as QSI in fact did, in obtaining recovery from GE. Hence, the

argument goes, if BACM, entitled to be placed in as good a position as it would have been in if the

contract had been fully performed, is to receive the fruits of QSI's efforts, then the costs of those

efforts should be deducted from BACM's recovery.

*F. Enterprises*, dealing with an anticipatory breach or repudiation of a contract, is inapposite. By the time QSI had breached the "all property" warranty of the Deed in Lieu, BACM had fully performed by releasing QSI from its mortgage loan obligations. There were no additional contractual obligations that BACM was spared from performing by virtue of QSI's breach. As soon as BACM learned of the breach, it immediately moved to intervene in the litigation and substitute itself for QSI as party plaintiff. The district court denied the requested substitution (which QSI opposed), but permitted BACM to preserve its rights through intervention. Granted, if BACM had been allowed to substitute for QSI and pursue its rights against GE, it may have incurred additional attorneys' fees and costs, but it was not permitted to do so. In the meantime, despite BACM's assertion of its interest in the pending claims against GE, and despite ambiguity about the relative rights of the parties, QSI made a calculated gamble, voluntarily assumed the risk of failure, and pursued its claims against GE to the point of settlement. As a volunteer, acting with knowledge of the facts and without legal obligation, QSI has no right to reimbursement. *Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 67 N.E.2d 906, 911 (Ohio 1946). "[E]quity will not aid a volunteer." *Id.*

The relief QSI seeks is in the nature of *quantum meruit* relief, whereby equity comes to the aid of one who has conferred some benefit on another without receiving just compensation for the reasonable value of services rendered. *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 924 (Ohio 1989). To recover in *quantum meruit*, a claimant must show that he "conferred a benefit on another and that the circumstances render it unjust and inequitable to permit the other to retain the benefit without paying for it." *Chrapliwy v. Sawyer Towing,* 901 N.E.2d 280, 283 (Ohio App.

- 16 -

1 Dist. 2008). In addition, "the claimant must have clean hands with respect to the subject matter of the claim." *Id.*

Inasmuch as the controversy surrounding the "ownership" of the claims against GE appears to have been caused by QSI's conscious and deliberate failure to disclose the true nature of the claims to Lennar (and later, BACM), QSI hardly satisfies the "clean hands" prerequisite for equitable relief. Because QSI continued to prosecute the action against GE in its own supposed self-interest long after it had made the "all property" warranty and long after BACM had intervened in the litigation to assert its conflicting interest, it is not unjust and inequitable to permit BACM to receive the benefits of the Deed in Lieu agreement, as aided by QSI's misguided volunteer efforts.

Accordingly, QSI's objections to the district court's damages award are without merit.

### III

QSI has not identified any reversible error in the district court's judgment. The judgment is therefore **AFFIRMED**.