[Cite as *Redman v. Hope Harbor Baptist Church*, 2024-Ohio-3056.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

CYNTHIA SUE REDMAN,

        PLAINTIFF-APPELLANT,

    v.

HOPE HARBOR BAPTIST CHURCH,
FRED ALBERT, PASTOR,

        DEFENDANT-APPELLEE.

CASE NO. 8-24-02

O P I N I O N

Appeal from Bellefontaine Municipal Court
Trial Court No. 23 CVG 0005

**Judgment Affirmed**

**Date of Decision: August 12, 2024**

APPEARANCES:

    *Kaileigh B. Vermillion* **for Appellant**

    *Steven R. Fansler* **for Appellee**

**WALDICK, J.**

{**¶1**} Plaintiff-appellant, Cynthia Sue Redman ("Redman"), brings this appeal from the December 4, 2023 judgment of the Bellefontaine Municipal Court. On appeal, Redman argues that the trial court erred by denying her complaint for Forcible Entry and Detainer ("FED") against defendant-appellee, Hope Harbor Baptist Church ("Hope Harbor"). For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{**¶2**} In 2008, Redman and her husband, Jim, purchased a property in Logan County consisting of just over an acre of land and a building that had been previously used as a church. Fred Albert ("Albert"), a pastor, contacted the Redmans when he learned that the building on the property was empty to inquire about renting it for a church. Ultimately the Redmans agreed to lease the property to Hope Harbor for $500 per month. However, the parties did not reduce their agreement to writing.

{**¶3**} Albert indicated that Jim permitted Hope Harbor to forgo paying rent for the first couple of months so that the church could "g[e]t on [its] feet." (Tr. at 37). After those initial months, Hope Harbor regularly paid rent in the amount of $500 per month from 2009-2014.

{**¶4**} According to Albert, in 2014, Jim stated that he was going to donate the property at issue to Hope Harbor. Albert indicated he was grateful and thanked both

Jim and his wife, was also present. According to Albert, Jim claimed his attorney had cancer and they would have to delay the transfer of the deed until it was beneficial for tax purposes. However, the Redmans did not transfer the deed to the property to Hope Harbor.

{¶5} From 2014 forward, Hope Harbor did not pay any rent. In addition, any repairs that were needed on the premises were done at Hope Harbor's expense. Further, when the church flooded at one point, Jim told Albert, in front of another witness, that Jim hoped Albert had insurance because the property was no longer Jim's. Albert stated that the church had paid over $20,000 in repairs between 2014 and 2022 that the church would not have paid if the church was simply a tenant.

{¶6} Jim died in 2016. Redman then became the sole owner of the property at issue. Redman did not collect any rent from Hope Harbor.

{¶7} In January of 2023, Redman served Hope Harbor with a notice to leave the premises pursuant to R.C. 1923.04, alleging that the church had failed to pay rent. A complaint was subsequently filed in the Bellefontaine Municipal Court. Hope Harbor filed an answer and a "counterclaim," seeking, *inter alia*, that the eviction to be denied. Notably, although styled as a "counterclaim," Hope Harbor only sought that the eviction be denied and a trial be held on the merits.

{¶8} A hearing was held on November 30, 2023. At the hearing, Redman and Albert provided testimony. In addition, another witness testified that he had

overheard Jim after the flood saying that he hoped Hope Harbor had insurance because the property was not Jim's any longer.

**{¶9}** On December 4, 2023, the trial court issued a written judgment entry summarizing the proceedings and the legal arguments of the parties. The trial court then came to the following conclusion:

> [T]he Court has not been asked to determine ownership of the property. The only issue before the Court is whether the Defendants should be evicted from the property for non-payment of rent. Based on the evidence presented and the course of conduct of both parties over the last 14[]years, the Court finds that the Defendants are not and have not been required to pay rent since the flood in 2014, and therefore cannot be evicted for non-payment of rent.

(Doc. No. 125). The trial court thus denied Redman's claim for eviction. It is from this judgment that Redman appeals, asserting the following assignment of error for our review.

### Assignment of Error

**The trial court erred as a matter of law in denying eviction for non-payment of rent.**

**{¶10}** In her assignment of error, Redman argues that the trial court erred by determining Hope Harbor could not be evicted for non-payment of rent due to the parties' customs.

Standard of Review

**{¶11}** Redman contends that her argument concerns an issue of law, and thus we should review the matter de novo. However, Redman is actually arguing that the trial court's determination regarding the parties' customs was against the weight of the evidence. Thus we must review the trial court's decision under a manifest weight of the evidence standard.

**{¶12}** In a civil appeal from a bench trial, we generally review the trial court's judgment under a manifest weight standard of review. *E.G.*, *Tecumseh Landing, L.L.C. v. Bonetzky*, 2015-Ohio-2741, ¶ 25 (3d Dist.). The Supreme Court of Ohio explained weight of the evidence in a civil context in *Eastley v. Volkman*, 2012-Ohio-2179, as follows:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' "

(Emphasis deleted.) *Eastley* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶13}** In assessing whether a verdict is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable

inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Eastley* at ¶ 20, citing *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). However, "[i]n reviewing the judgment of a trial court following a bench trial as being against the manifest weight of the evidence we are guided by a presumption that the trial court's findings are correct." *Bonetzky* at ¶ 25.

Analysis

**{¶14}** The majority of the facts in this case are not disputed. It is not disputed that Hope Harbor and the Redmans had an oral agreement for Hope Harbor to lease the Redmans' property. It is not disputed that for several years Hope Harbor paid $500 per month in rent to the Redmans. Further, it is not disputed that the "lease" was never reduced to writing.

**{¶15}** The primary dispute in this case began in 2014, when Albert claims that the Redmans indicated that they would be transferring the property to Hope Harbor. From that point forward, Hope Harbor paid no rent.

**{¶16}** Albert died in 2016, but in the roughly two years before he passed, and for six years after he passed, Hope Harbor did not pay any rent on the property. During that time, Hope Harbor conducted and paid for all of its own repairs. In fact, Albert testified that Hope harbor expended over $20,000 in repairs to the property that would have been the responsibility of a landlord if that was the understanding.

Notably, the Redmans' tax records from 2014 to 2016 were introduced into evidence, showing that they had rental properties but no rental income.

**{¶17}** The trial court reviewed the evidence and determined that Hope Harbor could not be evicted specifically for "non-payment of rent." The trial court determined that Hope Harbor had not been required to pay rent since 2014. The trial court's determination is consistent with the evidence presented at trial.

**{¶18}** The issue in this case is narrow. Redman seeks to evict Hope Harbor for non-payment of rent. However, the evidence supports a finding that since 2014, the course of conduct between the parties did not require Hope Harbor to pay any rent. Since the course of conduct for numerous years did not require Hope Harbor to pay rent, Hope Harbor cannot be evicted specifically for non-payment of rent. *See Quinn v. Cardinal Foods, Inc.*, 20 Ohio App.3d 194, 197 (3d Dist.1984) (holding that "where * * * a course of conduct is engaged in between the parties to a lease, which is contrary to the specific provisions within the lease, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate and logical consequences."). Stated differently, the basis for an eviction cannot be the failure to perform an action that a party has not been required to do. Therefore, Redman's assignment of error is overruled.

*Conclusion*

**{¶19}** Having found no error prejudicial to Redman in the particulars assigned and argued, the judgment of the Bellefontaine Municipal Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. AND MILLER, J. concur**