[Cite as *Treen v. Treen*, 2026-Ohio-1927.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

ANTHONY TREEN I,

    PLAINTIFF-APPELLEE,

    v.

ANTHONY TREEN II,

    DEFENDANT-APPELLANT.

CASE NO. 8-25-20

OPINION AND
JUDGMENT ENTRY

Appeal from Bellefontaine Municipal Court
Trial Court No. 25 CVG 562

Judgment Affirmed

Date of Decision: May 26, 2026

APPEARANCES:

    *Debra A. Lavey* for Appellant

    *Madyson S. Stratton* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Anthony Treen II ("Treen II"), appeals the October 10, 2025 judgment of the Bellefontaine Municipal Court granting plaintiff-appellee's complaint for forcible entry and detainer. For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2} In approximately 2005, Treen II moved into a mobile home situated on land owned by his father, Anthony Treen ("Treen"). The mobile home was owned by neither Treen nor Treen II, but belonged to the estate of Treen's deceased brother. At no point had title to the mobile home been transferred and at the time of the hearing it continued to be titled in the name of Treen's deceased brother. The parties entered into an informal arrangement whereby Treen II occupied the premises rent-free in exchange for the payment of utilities and property taxes. Over the years, Treen II transitioned from reimbursing Treen for property taxes to making direct payments to the county auditor. No written agreement relating to Treen II's occupancy was entered between the parties. While residing at the property, Treen II built a garage and installed a well on the property.

{¶3} On April 8, 2025, Treen served a 30-day notice pursuant to R.C. 5321.17 on Treen II to terminate a month-to-month tenancy. On May 12, 2025, Treen served a 3-day notice to leave the premises. Treen II did not vacate the premises. As a result, Treen filed a R.C. 1923 forcible entry and detainer action against Treen II on June 4, 2025 in the Bellefontaine Municipal Court seeking restitution and possession of the premises as well

as recovery for any damages beyond normal wear and tear. An eviction hearing was held on September 11, 2025. After hearing testimony from both parties, the trial court ordered Treen II to leave the premises by the end of the day on October 23, 2025. A final appealable order reflecting this judgment was filed on October 10, 2025.

{¶4} Treen II timely filed his notice of appeal on October 16, 2025. He raises two assignments of error.

**First Assignment of Error**

**The trial court's finding that there was a landlord-tenant relationship between the parties is against the manifest weight of the evidence.**

**Second Assignment of Error**

**In the alternative, the trial court's finding that there was a month-to-month tenancy between the parties is against the manifest weight of the evidence.**

*Discussion*

{¶5} Both of Treen II's assignments of error claim the trial court's judgment was against the manifest weight of the evidence and, accordingly, share the same standard of review.

*Standard of Review*

{¶6} "In a civil appeal from a bench trial, we generally review the trial court's judgment under a manifest weight standard of review." *Redman v. Hope Harbor Baptist Church*, 2024-Ohio-3056, ¶ 12 (3d Dist.), citing *Tecumseh Landing, L.L.C. v. Bonetzky,*

2015-Ohio-2741, ¶ 25 (3d Dist.). "In reviewing the judgment of a trial court following a bench trial as being against the manifest weight of the evidence we are guided by a presumption that the trial court's findings are correct." *Tecumseh* at ¶ 25. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Id*., quoting *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978), syllabus.

*First Assignment of Error*

{¶7} In his first assignment of error, Treen II contends the trial court's finding of a landlord-tenant relationship is against the manifest weight of the evidence. Treen II highlights Treen's own testimony at the eviction hearing, where Treen admitted he was not "renting" the property and Treen II paid no rent. Furthermore, Treen II points to the parties' conduct during his 20-year occupancy of the property to argue he is not a tenant and Treen is not a landlord.

{¶8} In his appellate brief, Treen II first argues that although Treen holds title to the land where the mobile home is situated, he does not qualify as a landlord because he does

not own the mobile home itself. R.C. 5321.01(B) defines "landlord" as "the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement." "Residential premises" means "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant." R.C. 5321.01(C). It is undisputed neither Treen II nor Treen owns the mobile home. It is further undisputed Treen holds title to the land on which the mobile home is situated. Accordingly, we find, as defined by R.C. 5321.01(C), Treen is the owner of the "grounds, areas, and facilities" on which the dwelling unit (the mobile home) is located.[1] Therefore, under the plain statutory definition, Treen is a landlord if the existence of a rental agreement can be established.

{¶9} A "rental agreement" is "any agreement or lease, written or oral, which establishes or modifies the terms, conditions, rules, amount of rent charged or paid, or any other provisions concerning the use and occupancy of residential premises by one of the parties." R.C. 5321.01(D). Notably, payment of rent is not a requirement for a finding that a rental agreement exists. *See Tucker v. Kanzios*, 2009-Ohio-2788, ¶ 21 (9th Dist.) ("Section 5321.01(D) . . . does not say that a 'rental agreement' must require the payment

---

[1] We further note that adopting Treen II's narrow definition of a landlord, requiring ownership of both the land and the residential structure, would prove problematic in the context of lot rentals and ground leases. Having found the statutory definition sufficient to establish Treen qualifies as a landlord if a rental agreement exists, we decline to address those broader areas of law.

of rent."). "[P]ayment of rent is not a statutory tenant obligation, but rather one created by contract." *Georgetown Park Apts. v. Woernley*, 112 Ohio App.3d 428, 431 (8th Dist. 1996). In the present case, the trial court found an oral agreement existed between the parties, the terms and conditions of which permitted Treen II to reside in the mobile home in exchange for his payment of utilities and property taxes. We agree.

{¶10} Treen II argues the trial's court's finding is not based on competent and credible evidence, because Treen, at the eviction hearing, "admitted that he was not renting the property to [Treen II], rather he was just allowing him to reside at the property." (Appellant's Brief at 8). Indeed, the following exchange occurred at the eviction hearing during Treen's cross-examination by Treen II's attorney:

| [Attorney]: | And it's your contention that you were renting the premises to your son; is that correct? |
| [Treen]: | No. I was just letting him live there. |
| [Attorney]: | So you were not renting the property. |
| [Treen]: | The agreement is he is to pay the taxes and the sewer bills and the utilities.[2] |

(Sept. 11, 2025 Tr., at 10-11).

{¶11} This exchange, while seemingly contradictory, provided a sufficient basis for the trial court to conclude Treen's denial of "renting" the property to Treen II referred only to the absence of traditional monetary rent payments. Treen's immediate clarification,

---

[2] Testimony from Treen and Treen II at the eviction hearing indicated Treen continued to pay the sewage bill throughout Treen II's occupancy, despite any agreement to the contrary.

reaffirming the agreement required Treen II to pay taxes and utilities, identifies the specific consideration exchanged for the occupancy. As the trier of fact, the trial court was best positioned to weigh Treen's conflicting testimony and acted within its discretion by interpreting that testimony as describing a rental agreement, whereby Treen II, in exchange for occupancy of the premises, provided payment of utilities and taxes in lieu of traditional monetary rent. *See Seasons Coal Co.,* 10 Ohio St.3d 77, at 80 (1984). Respecting the fact-finder's discretion, we find the trial court's assessment of the existence of a rental agreement to be supported by competent and credible evidence in the form of Treen's testimony.

{¶12} Treen II further points to *Estate of Helle v. Hensley*, 2011-Ohio-4279 (6th Dist.) as support for the proposition that Treen and Treen II had not entered into a rental agreement. In *Hensley*, the Sixth District found no rental agreement existed between a mother and son when there was an oral agreement the son could live at the home in exchange for making the monthly mortgage payments. *Id*. at ¶ 19. However, unlike the present case, there was no evidence in *Hensley* that the son had exclusive right to the property. *Id*. Further, there was nothing "in the record which would indicate there was a lease, written or oral." *Id*. Unlike the circumstances in *Hensley*, the evidence here regarding Treen II's exclusive occupancy and the parties' oral agreement was sufficient to support the trial court's finding of a lease.

{¶13} Treen II further contends Treen cannot be classified as a landlord, because he failed to maintain the property or provide running water, thereby violating the statutory duties set forth in R.C. 5321.04. This argument, however, conflates a landlord's legal status with the fulfillment of duties inherent to that status. R.C. 5321.04 does not define who a landlord *is*; rather, it delineates the obligations that befall a landlord once that status is established. The remedies available to a tenant for a landlord's failure to fulfill these obligations are outlined in R.C. 5321.07. Such remedies do not include a retroactive dissolution of the landlord-tenant relationship, nor did Treen II seek relief under that statute.

{¶14} Finally, Treen II argues he was not a tenant as defined under Ohio law. He contends Treen once stated he had "already given" him the property, leading Treen II to believe he was an owner rather than a tenant. (Appellant's Brief at 9). A tenant is "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." R.C. 5321.01(A). As discussed above, because the record contains credible evidence to support the trial court's finding of an oral rental agreement granting Treen II exclusive occupancy, we find Treen II met the statutory definition of a tenant. In stating its rationale finding the existence of a rental agreement, the trial court necessarily found Treen II's testimony and subjective belief regarding his tenant status was not credible.

{¶15} Giving due deference to the trial court as the finder of fact, and finding competent, credible evidence in the record to support the trial court's conclusions as to all essential elements required for forcible entry and detainer, we conclude the trial court's judgment is not against the manifest weight of the evidence.

{¶16} Treen II's first assignment of error is overruled.

*Second Assignment of Error*

{¶17} In his second assignment of error, Treen II asks us to find in the alternative that even if a landlord-tenant relationship exists, the trial court's finding of a month-to-month tenancy is against the manifest weight of the evidence. Treen II highlights the absence of monthly rental payments and notes that property taxes were paid annually. He further argues the payment of utilities cannot constitute rent, because, by not owning the mobile home, Treen derived no benefit from the payment of utilities, and, thus, no consideration was exchanged from these payments.

{¶18} "When [a] lease is not in writing or is defectively executed, a month-to-month tenancy is created where there is a monthly rental payment." *Eberly v. Irons,* 2007-Ohio-4240 ¶ 34 (5th Dist.), citing *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282 (1965) and *Wineburgh v. Toledo Corp.*, 125 Ohio St. 219 (1932). Here, the trial court as fact finder determined a month-to-month tenancy was created due to an oral agreement between the parties whereby Treen relinquished control of the property in exchange for Treen II paying the monthly utilities and annual property taxes. As stated during the discussion of

the first assignment of error, monetary payments are not a necessary prerequisite to determine a rental agreement exists. *See Tucker*, 2009-Ohio-2788, at ¶ 21. The payment of utilities constitutes a "term," "condition," "rule" or "provision" that evidences a rental agreement between the parties pursuant to R.C. 5321.01(D). Such payments were made on a monthly basis. We find this constitutes monthly payment of rent and, consequently, establishes a month-to-month periodic tenancy. *See Ramsdell v. Ramsdell*, 2013-Ohio-409, ¶ 14-15 (6th Dist.) (payment of utilities sufficient to establish a rental agreement); and *Scott v. Schuster*, 2019-Ohio-4448, ¶ 6 (9th Dist.) (monthly payment of electric bill sufficient to establish an oral rental agreement and a month-to-month periodic tenancy).

{¶19} Treen II argues the payment of utilities as consideration is illusory, because Treen does not own the mobile home and, thus, "derives no value or benefit from the payment of utilities." (Appellant's Reply Brief at 4). This argument misconstrues the fundamental principles of contract law. Consideration is a bargained-for-exchange of legal benefit or detriment. *See Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16. "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 2012-Ohio-690, ¶ 16. "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* Additionally, "'[a]bsent a showing of fraud, consideration is not deemed legally insufficient merely because it is inadequate.'" *First Natl. Bank of Omaha v. iBeam*

*Solutions, L.L.C.*, 2016-Ohio-1182, ¶ 44 (10th Dist.), quoting *Brads v. First Baptist Church*, 89 Ohio App.3d 328, 336 (2d Dist. 1993). *See also Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283 (9th Dist. 1997) (courts generally do not inquire into the adequacy of consideration once it is found to exist). "An illusory promise is a promise that lacks consideration and thus, is unenforceable." *McGlone v. Motorist Mut. Ins.*, 2001-Ohio-2188, *8 (3d Dist.).

{¶20} In the present case, we find sufficient credible evidence to support the trial court's conclusion that a valid bargained-for exchange exists. Even assuming Treen did not receive a benefit from Treen II's payment of utilities, such a finding is inconsequential. The presence or absence of a direct financial benefit to Treen is not dispositive. Rather, the existence of a bargained-for legal detriment is sufficient to support the agreement. Treen II benefited from the possession of the property while incurring a legal detriment by assuming the obligation to pay for utilities and property taxes—financial burdens he was not otherwise legally required to bear—as he held no ownership interest in the real property or the mobile home. Conversely, Treen suffered a legal detriment by forbearing his possessory rights to the land.

{¶21} Furthermore, despite Treen II's argument to the contrary, we find the record describes an arrangement from which Treen would necessarily derive inherent benefits under the oral agreement. While not explicitly enumerated as findings by the trial court, there are inherent benefits flowing to a landowner in such an agreement. For

example, Treen II's payment of property taxes directly relieved Treen of a financial obligation tied to his ownership of the land. Additionally, an occupied and maintained property is less likely to be vandalized or fall into a state of waste. Moreover, and most pertinent to Treen II's challenge regarding the nature of the periodic tenancy, the consistent payment of utilities ensured the property remained connected to the various services. Had these services been terminated, the resulting disrepair to the infrastructure may have caused a significant decrease in the value of Treen's underlying land.

{¶22} We find the testimony sufficient to support the existence of a rental agreement as defined by R.C. 5321.01(D) and as found by the trial court. The parties had an understanding which established or modified the terms, conditions, rules or any other provisions concerning the use and occupancy of residential premises. *Ramsdell*, 2013-Ohio-409, ¶ 15. Not only was appellant the exclusive resident in the mobile home during the period at issue, but he also was expected to pay utility costs and property taxes as a condition for his residence on the property.

{¶23} Finally, Treen II cites *Amick v. Sickles*, 2008-Ohio-3913 (4th Dist.), to support his conclusion that "utility payments for electric and gas directly to the utility company . . . do not create a month-to-month tenancy." (Appellant's Brief at 11). However, in *Amick* "[i]t [was] undisputed that there was no written or oral lease" and "no real agreement" existed between the parties. *Id*., at ¶ 2, 19. Conversely, the trial court in the present case found an oral rental agreement *did* exist. Because we find the existence

of a rental agreement is a factual determination supported by competent and credible evidence, *Amick* does not compel a reversal here.

{¶24} Treen II's second assignment of error is overruled.

*Conclusion*

{¶25} For the foregoing reasons, both appellant's assignments of error are overruled. Having found no error prejudicial to the defendant-appellant in the particulars assigned and argued, the judgment of the Bellefontaine Municipal Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, and WALDICK, J. J., concur.**

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Mark C. Miller, Judge

John R. Willamowski, Judge

Juergen A. Waldick, Judge

DATED:
/jlm